[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 345 
This is an appeal from a decree of the Hudson County Orphans' Court confirming the Master's report and directing the Howard Savings Institution, administrator, to make distribution of the estate of Mary Louise Blau, deceased. Decedent, a spinster, died intestate at Jersey City, April 10, 1942.
According to the administrator's report, it had $145,757.19 for distribution; that decedent left no next of kin nearer than first cousins and it was uncertain who were her next of kin entitled to share in her estate.
On June 16, 1944, the Orphans' Court referred the matter to William R. Gannon, a Master in Chancery, to determine the validity of the many claims and to settle and advise the court as to the next of kin of the decedent and their respective distributive shares. Hearings were commenced before the *Page 346 
Master on December 6, 1944, at which Mr. John J. Moriarty appeared as proctor for the Office of Alien Property Custodian, representing alien enemies alleged to have interests in the estate. At this hearing, before any testimony was taken, the Master reminded counsel representing respective interests of the limitations of the order of reference and stated:
"* * * To take testimony `to settle and advise the court as to those who are next of kin of the decedent, and to whom and in what proportion, based on proximity of blood, the balance of the decedent's personal estate is to be paid and distributed.' That is the full, complete and only question with which I can deal at this time. And later on after we have established those relations we will go into the question of `the method and proportion by which the Federal Estate Tax, paid by the administrator under compulsion of law, shall be apportioned among the next of kin of the decedent who are entitled both to real and personal property and those entitled to personal property only.'
"Now is it agreed that those are the limitations of this proceeding?"
To which interrogation all counsel agreed.
The Master's temporary report was filed April 23, 1946, recommending that distribution be made on the basis of first cousins, 19 shares having been established; reporting that further investigation might establish six more shares and, if decedent's father had brothers or sisters who left representatives surviving decedent, the number of persons eligible to share in the estate would be further extended.
On June 22, 1946, the Orphans' Court entered a decree of partial distribution confirming the Master's report and directing the administrator to compute 50% of the net sum remaining after payment of the expenses allowed and to divide it into 25 equal shares, 19 of which were to be distributed on a per stirpes
basis to those persons enumerated in the decree; that the remaining six shares of the 25 basic shares were to be held by the administrator pending determination of their validity and that the division on the basis of 25 shares should be without prejudice to some other division if additional claims were adequately proven. *Page 347 
On January 17, 1947, the administrator reported to the court that it appeared that certain enemy aliens might have some interest in the distributive shares of the estate and requested the court's instructions on making final distribution. The court re-referred the matter to the Master to take further proof regarding such claims, limiting the time within which to present such claims, and the filing of the supplemental Master's report.
The Attorney General of the United States, under authority of the Trading with the Enemy Act and Executive Order 9788, entered a vesting order on May 29, 1947, determining that "(1) 12/31 of the property under the supervision of the Orphans' Court was personalty of Mary Louise Blau and was payable or deliverable to, or claimed by certain individuals named in the order and (2) that these individuals were residents and nationals of a designated enemy country (Germany)" and that the Attorney General vested 12/31 of the estate in the Alien Property Custodian. On July 25, 1947, the Alien Property Custodian commenced a suit in the United States District Court for the District of New Jersey to enforce a demand in accordance with this order. This suit has been held in abeyance, however.
The supplemental Master's report filed June 27, 1947, determined that six additional shares should be awarded to first cousins of the decedent or their legal representatives; that, in view of the fact that this latter distribution comprised aliens and residents of Germany, their title and interests were vested in the United States of America under the provisions of the Trading with the Enemy Act and Presidential Executive Order No. 9788, and should be paid to the Attorney General of the United States.
The Master's supplemental report was confirmed in all respects by the Hudson County Orphans' Court by a decree of final distribution entered on August 6, 1947, after all exceptions to that report were heard, adjudicating that there were six additional shares entitled to participate in the distribution, making a total of 25 distributive shares. It is to be noted that,inter alia, the decree recited that counsel representing *Page 348 
the claims of enemy aliens did not press his argument on his exceptions, among which was:
"Third: That the Master erred in failing to accord to the findings of the Attorney General of the United States, made by him in the Vesting Order entered in the Estate of Mary Louise Blau (Vesting Order 9122) that 12/31 of the property under the supervision of the Hudson County Orphans' Court in the matter of the Estate of Mary Louise Blau, is property payable or deliverable to or claimed by certain German Nationals named therein and that it is now vested in the Attorney General of the United States and deliverable to him, the conclusive character and weight that such findings were entitled to under the law,i.e., that they are conclusive and binding upon him and upon the Court.
The decree provided that, while the court had found there were only six additional enemy alien shares, in view of the vesting order, the administrator was directed to pay over to the Attorney General of the United States 12/31 of the net distributable estate which included the six additional distributive shares and shall be "without prejudice to the rights of the persons entitled to the basic 25 shares" entitled to participate. From this decree the Attorney General appeals.
Appellant contends that the Orphans' Court lacked jurisdiction to determine title to the distributive shares of the estate in the custody of the Alien Property Custodian by virtue of the vesting order; that the court's rejection of the Blau family tree document and two letters addressed by its author to the decedent was error; that they should have been admitted in evidence to give recognition to the claims of certain additional enemy aliens to whose rights the appellant claims to have succeeded; that the Master's failure to consider testimony establishing that one Barbara Pinkpank is a legal representative of Wilhelmine Friedrich Volkmar, a deceased first cousin of the decedent and as such is entitled to share in the estate of the decedent, on the sole ground that it lacked certainty was error.
In the exercise of its jurisdiction over the administration of estates of decedents domiciled within its territorial limits, the Hudson County Orphans' Court assumed jurisdiction over the administration of the estate of Mary Louise *Page 349 
Blau. Thereafter, the matter was referred to a Master in Chancery for hearing on the claims of interests in the estate. A careful study of the record of the many Master's hearings and court proceedings, reveals that without exception representatives of the Alien Property Custodian and the Attorney General of the United States were present, appeared and participated on behalf of alleged enemy aliens in the examination and cross-examination of witnesses, in the legal argument of counsel and submitted evidence to support their contentions. On one occasion an order of the Orphans' Court was entered granting the motion of the Attorney General, as representative of the Custodian, for additional time for the Custodian to take testimony in Germany. Throughout all these Master's hearings and proceedings in court the appellant never once questioned or objected to the jurisdiction of the Hudson County Orphans' Court. Nor did he give any indication that he doubted the jurisdiction of the court to determine the matters before it. At one point the appellant had taken some exceptions to a report filed by the Master, but at the time set for hearing the exceptions, the appellant abandoned all exceptions to the findings. In this matter there is no conflict of authority in the true sense of the word between the findings of the Orphans' Court in the application of the laws of the State of New Jersey and the laws of the United States in the application of the Custodian's vesting order. The purpose of the proceedings in the Orphans' Court was to administer the estate and to distribute it according to the laws of the State of New Jersey and to that end the proceedings are in rem. It is conceded that the law empowers the Attorney General to issue an order vesting property in himself that would go to enemy aliens and the right of the Custodian to receive property owing or belonging to an enemy or ally of an enemy where that property right of the enemy is a definite or determined right is not questioned. However, the right to take an interest in decedent's estate in cases of intestacy stems from the New Jersey Statutes of Distribution and is a proper matter for the state court to determine. To hold otherwise would be tantamount to allowing the Custodian to determine matters *Page 350 
of probate for himself. We are of the opinion that until the distributees and the distributive shares of an estate have been determined by the state court (probate matters being exclusively within the province of state courts) the Alien Property Custodian could not vest in himself, by a vesting order, specific interests in the estate. In Miller v. Clausen, 299 Fed. 723 (C.C.A.,8th Circuit 1924), in discussing the jurisdiction of the state court to determine interests in an intestate's property it was said at pp. 726, 727:
"The right to determine and decree who are the heirs at law of a decedent in Nebraska is vested solely in the county courts. * * *
"The contention that the county court of Morrill County had no jurisdiction because of the provisions of the Trading with the Enemy Act is not sound. That act did not take away from the county court its peculiar jurisdiction to determine who were the heirs of Andrew Hansen and to adjudicate their status as such."
In addition, it requires no citations of authority to emphasize the well-defined rule that the jurisdiction of the court below not having been raised there, it cannot be successfully advanced in the appellate court.
The document offered in evidence purporting to be a family tree was a typewritten carbon copy instrument at the end of which was affixed the name of Carl Alvin Knab. Two letters written by Carl Alvin Knab to the decedent referring to the family tree were offered in evidence in an effort to properly identify it as the work of the author Knab and to establish the relationship to decedent. The signatures on these letters were concededly the same and the evidence sufficiently supports the authenticity of the letter which accompanied the family tree. Testimony of Clara Viola Horton, a family friend and companion of the decedent was offered in evidence to establish that Carl Alvin Knab had sent decedent the family tree and that he was related to decedent. Miss Horton testified that decedent had exhibited to her the family tree and the letter accompanying it, had told her and decedent's sister, Emilia, that her cousin Carl Alvin Knab had sent her the family tree from Germany. The family tree was discovered in decedent's home shortly after her death and *Page 351 
turned over to the administrator. We are of the opinion that this declaration of the deceased concerning pedigree, or the relationship of her own family to a third person witness is competent evidence to identify the document of genealogy and in this case has a corroborative effect on the inference of authorship to be drawn from the family tree with the name of Carl Alvin Knab subscribed thereto. It is the opinion of this court that though the evidence is not conclusive there is sufficient evidence to identify and to admit this document as being within the pedigree exception to the hearsay rule. "The fundamental idea of authentication is to connect the writing with the person alleged to be its author. Now under the present exception (pedigree) the testimonial statement may be the assertion either of an individual member or of the family. Hence, it is not necessary, where a family Bible or a family tree is offered as embodying the family repute, to prove the entry to be that of an individual member, for its adoption by the family makes it a family assertion." Wigmore, § 1496, pp. 319, 320 (parenthesis ours). In the case of In re Hennion's Estate, 131 N.J. Eq. 293
(Prerog. 1942), at p. 296, the court cites with approvalFulkerson v. Holmes, 117 U.S. 389, 6 Sup. Ct. 780, which holds that but slight proof is required to prove a relationship set forth in a declaration of pedigree. Numerous authorities throughout this country are cited in support of this principle.
We conclude that taken as a whole there has been sufficient proof offered to authenticate the genealogical table and to entitle it to be introduced in evidence. It is said in 32C.J.S., § 741, p. 659, in speaking of the degree of proof required: "Although reasonable certainty in proof of execution, genuineness, or authenticity of an instrument offered in evidence should be required, it is not necessary that the proof should be conclusive but a prima facie showing that the instrument is genuine and authentic is sufficient to warrant its reception."
Appellant urges that the Master erroneously failed to give consideration to the testimony in the record that Barbara Pinkpank was a legal representative of Wilhelmine Friedrich *Page 352 
Volkmar, a deceased first cousin of Mary Louise Blau and as such is entitled to share in the estate of decedent. We are of the opinion that the testimony being unequivocally offered as a statement of fact within the personal knowledge of deponent and that the stated present address of the representative of the deceased first cousin was within his knowledge and there being no testimony offered to the contrary, it established that Barbara Pinkpank was entitled to take the share of Wilhelmine Friedrich Volkmar.
The matter is remanded to the County Court for such further proceedings as may be in conformity with the foregoing determinations.