67 N.J. Super. 526 (1961)
171 A.2d 108
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTHONY BASSANO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1961.
Decided May 15, 1961.
*527 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. C. Robert Sarcone argued the cause for appellant.
*528 Miss June Strelecki, Special Legal Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Prosecutor of Essex County, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Bassano and two others, Anthony Cuozzo and Anthony Gammaro, Jr., were convicted in the County Court on an indictment which charged conspiracy to obtain moneys by false pretense, N.J.S. 2A:98-1(f). Bassano appeals.
The pertinent facts are these: On June 17, 1958 Bassano purchased a used 1955 Eldorado Cadillac convertible, serial No. 5562-75210, from one Peter G. Aleveras, a partner in Parkway Auto Sales, East Orange, New Jersey. He insured it with American Fidelity & Casualty Company through Service Plan, Incorporated. The policy contained a theft clause. Shortly thereafter, the automobile developed mechanical trouble so extensive as to make it inoperable. So far as appears from the record, it was never restored to working order.
At about 1:25 A.M. on November 9, 1958 defendant reported to the police of the City of Elizabeth that the car had been stolen. He stated that upon leaving a tavern on Westfield Avenue, Elizabeth, where he had been between the hours of 11 P.M. and 1 A.M., the automobile was missing. The next day William L. Olsen, Claims Supervisor for the Service Plan, Incorporated, received a telephone call from a person who identified himself as Anthony Bassano and reported the theft of the vehicle. Olsen, in the regular course of business, made a written report of the information supplied by the caller. The report, dated November 10, 1958, was received in evidence over the objection of defendant and marked exhibit S-3; it coincided in detail with the identification of the vehicle as set forth in the insurance policy issued to defendant. In short, the report referred to the 1955 Eldorado Cadillac, serial No. 5562-75210, insured under the policy. Olsen testified that he was unable to identify the caller as Bassano and it was upon that ground that the objection to the admission of S-3 was made.
*529 On November 17, 1958 Detectives Mundy and Drop of the Belleville Police were dispatched to a garage at 1 Lake Street, Belleville, where they found defendant Cuozzo and one Daniel Mendola. Also found were parts of a dismantled Cadillac automobile. Cuozzo was taken to the Belleville police headquarters where he stated that he and another man had made arrangements with a third man to take the automobile parts which came from a 1955 Cadillac Eldorado, sell what they could and dispose of the remainder. For this they were to receive $125. He mentioned Gammaro in connection with the transaction. The following day Gammaro appeared at the Belleville police headquarters. Under questioning he said that during the third week of October 1958 (approximately two weeks before the car was reported stolen), he was introduced to a man named "Tony" with whom he agreed to cut up a car and dispose of its parts by sale or otherwise for $125. He went on to say that the same evening he and Cuozzo went with "Tony" to a street off Main Street in East Orange, where "Tony" pointed out a 1955 white Eldorado Cadillac convertible which he and Cuozzo towed to Belleville and subsequently cut up. On the basis of information received from Gammaro the motor and transmission of the car were found in a garage on Delavan Avenue and four tires from the car were found on a vehicle owned by one Eugene Donnelly. At the trial Donnelly testified that he had purchased them from Cuozzo and Gammaro on November 14, 1958.
Both Gammaro and Cuozzo gave detailed written statements to the Belleville police and also to Detectives Harris and Bentley of the East Orange police. These were received in evidence and the jury was instructed that each statement was binding only on the defendant who gave it. The statement of Gammaro contains a recital that he was shown a photograph bearing the legend "East Orange, New Jersey Police Department, 9-10-40," and that he identified its subject as the man "Tony" with whom he had arranged to cut up the Cadillac. At the trial the photograph was identified by Detective Harris as being that of Anthony Bassano and *530 it was offered in evidence. Defendant objected upon the ground that it was a police photograph. The legend was deleted and the photograph received in evidence without further objection.
Defendant did not take the stand. The prosecutor in his summation commented on this fact in a manner which will be more fully set forth hereinafter.
The sole grounds of appeal urged by defendant are that: (1) the evidence relating to the telephonic report of the alleged theft to Olsen, and his report itself, were hearsay and should not have been received; (2) the statement of Gammaro in which he identified Bassano and recited the legend on the photograph was prejudicial in that it permitted the jury to infer that Bassano had a criminal record; and (3) the prosecutor's comment in summation concerning defendant's failure to testify deprived him of his fundamental right to a fair trial.
The admissibility of Olsen's testimony relating to the telephone call in which the alleged theft loss was reported by one identifying himself as Bassano and the subsequent admission of the written report made by Olsen, which incorporated the essentials of such conversation, rested on different legal principles. Basically, the telephone conversation was offered to prove defendant's state of mind, i.e., to establish that knowing his automobile had not been stolen, but that he had arranged for its demolition, defendant, with intent to defraud the insurance company, sought to recover under the theft coverage of his insurance policy. See McCormick, Evidence § 228, pp. 465-466 (1954).
On the other hand Olsen's written report was offered under the Uniform Business Records as Evidence Act, N.J.S. 2A:82-35:
"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." *531 The purpose of the exhibit was to establish the happening of an event, namely, a telephone call made in the regular course of business in which a fraudulent claim was made.
Yet the admissibility of both the telephone conversation and of exhibit S-3, which memorialized it, primarily depended upon the legitimacy of an inference that the telephone call was made by defendant, or at his behest. Lacking such inference, necessarily the call could not be related to defendant's state of mind, nor could the source of information be found by the trial court to be sufficiently reliable to justify the admission of S-3 as a relevant record as required by the act. Thus, if the proof concerning the telephone conversation (as distinguished from the record of the same) did not inferentially identify Bassano, or a person acting on his direction, as the caller, it was inadmissible, and since the authenticity of the exhibit could rise no higher than its source, it likewise was inadmissible. Conversely, if the identity of the caller was inferentially established, the requirements of N.J.S. 2A:82-35 that the record be relevant, and that its source be such as to justify its admission in the opinion of the trial court, were met.
The approach taken by defendant on this feature of the case is that since Olsen admittedly was unable to identify the voice as that of Bassano, the identity of the caller became a matter of sheer speculation. The premise upon which the buttressing argument is erected is that recognition of the voice of the caller is a prerequisite to testimony concerning a telephone conversation where the identity of the caller is in issue. As authority defendant cites Murphy-Hardy Lumber Co. v. Roder, 83 N.J.L. 34 (Sup. Ct. 1912) and Smarak v. Segusse, 91 N.J.L. 57 (Sup. Ct. 1917). Neither case expresses this narrow view.
In Murphy it was noted that the voice of Roder was identified and so the telephone conversation was admissible. Hence, the court said that it found it [83 N.J.L. 34] "unnecessary to go into the broad question of telephone conversations *532 or to lay down any general rule touching communications of this sort." In Smarak the court affirmed the refusal of the trial judge to permit a witness offered by the defendant to testify to a telephone conversation with one whose voice he did not recognize and who informed the witness he was a servant of the plaintiff. But the court said (91 N.J.L., at page 61):
"The burden of proof always rests upon the party introducing evidence of what was said over a telephone to establish by some proof, either direct or circumstantial, the identity of the person speaking." (Emphasis added)
This recognition of circumstantial evidence of the identity of a caller as a satisfactory substitute for, or an equivalent of, direct evidence of identity through recognition of the caller's voice, is in accord with the weight of authority.
Professor McCormick aptly illustrates the validity of this view as follows:
"If a witness testifies that he received a telephone call `out of the blue,' and that the voice at the other end declared, `This is X calling,' followed by a message from the purported X, this is not a sufficient authentication of the message as coming from X. The needed link, however, will be supplied if the witness testifies that he recognized X's voice, or if the message reveals that the speaker had knowledge of facts that only X would be likely to know, or if other confirming circumstances make it probable that X was the speaker." McCormick, supra, § 193, pp. 405-406. (Emphasis added)
See also 20 Am. Jur., Evidence, § 368, p. 336 (1939).
In Texas Candy & Nut Co. v. Horton, 235 S.W.2d 518, 521 (Tex. Civ. App. 1950) the rule was stated as follows:
"When the party called over a telephone depends entirely upon the word of the party calling as to his identity, the conversation is hearsay and not admissible. If, however, the party calling, in addition to his statement of his identity, relates facts and circumstances which, taken with other established facts, tend to reveal his identity, then the conversation is admissible."
Accord: Gutowsky v. Halliburton Oil Well Cementing Co., 287 P.2d 204 (Okl. Sup. Ct. 1955).
*533 The "knowledge" factor emphasized in McCormick, supra, seems not to have been discussed by our courts in any case contextually apposite to the case at bar. However, in another setting the significance of the intimate knowledge of a telephone caller intending to make bets on horse races, that a person of defendant's surname would accept bets, was considered. State v. O'Donnell, 8 N.J. Super. 13, 16 (App. Div. 1950). There the court said:
"* * * What is said by one initiating a call, by disclosing intimate knowledge, may so identify him and the person whom he calls as associates in the enterprise, as to make the whole conversation admissible. * * *"
The "intimate knowledge" of the person who telephoned Olsen included the following facts; The "missing" vehicle was a 1955 Cadillac Eldorado which was owned by defendant; it had "disappeared" on November 8, 1958; it was insured against theft by the American Fidelity & Casualty Company; Service Plan, Incorporated was the agency appointed by the insurer to adjust claims in its behalf.
The significance of this knowledge in the caller is manifest. It immediately suggests two questions, viz.: Who, other than defendant, or someone acting at his instance, would be in possession of this vital information, and what motive would a stranger to Bassano have to make this claim? The probative worth of circumstantial evidence is determined by the rules of ordinary reasoning such as govern mankind in the ordinary affairs of life. State v. O'Connor, 134 N.J.L. 536, 539 (Sup. Ct. 1946). Plainly, if an answer to these questions favorable to Bassano may be found, it would rest on pure conjecture and, in terms of reasonable probability, would pale when compared with the conclusion that either he or someone aiding his fraudulent scheme was the caller.
In our judgment the case underscores the soundness of the principle, engrained in our law, that circumstantial evidence "is ofttimes more certain, satisfying and *534 persuasive than direct evidence, where credit and accuracy of observation, knowledge and recollection may be questions giving rise to substantial doubts." State v. O'Connor, supra, at page 539. See also, State v. Corby, 28 N.J. 106, 119 (1958); State v. Rogers, 19 N.J. 218, 234 (1955); State v. Goodman, 9 N.J. 569, 581 (1952). We are convinced that the trial court properly found the circumstances to be such that the jury could conclude beyond a reasonable doubt that the telephone call was made by Bassano or his alter ego and that the conversation was admissible. See McCormick, supra, § 194, at page 407. We likewise conclude that the circumstances undergirding the conversation served to fulfill the requirements of relevancy and authenticity of source prescribed by N.J.S. 2A:82-35 and thus exhibit S-3 was properly received in evidence as a business record.
As noted, defendant also contends that the admission in evidence of Gammaro's statement which contained a recital of the legend on a photograph of Bassano was fatally prejudicial. His argument is that this descriptive matter established that the photograph was taken from a police file, hence it tended to prove that defendant had a criminal record. We disagree.
First, we observe that no objection was interposed by defendant at the time the statement was offered in evidence. Consequently, if defendant's position is to be sustained, R.R. 1:5-1(a) must be invoked. To be regarded as "plain error" within the purview of the rule, the admission of the exhibit must not only have been error, but also it must convincingly appear that it grievously affected defendant's substantial rights and possessed a clear capacity to bring about an unjust result. See State v. Hipplewith, 33 N.J. 300, 309 (1960). The statement was properly introduced against Gammaro and the court instructed the jury that its contents were binding only on him. Had defendant's attorney initially requested that reference to the descriptive matter on the photograph be blocked out, *535 no doubt the request would have been honored, since at defendant's behest this information was deleted from the photograph itself before it was received in evidence. Moreover, the fact that the police are in possession of a photograph does not necessarily mean that its subject has a criminal record. Such a photograph may come into the hands of the police for many reasons other than conviction of crime, and the source of it may be wholly unconnected with criminal activity on the part of the subject. Cf. State v. Dancyger, 29 N.J. 76, 91 (1959), certiorari denied 360 U.S. 903, 79 S.Ct. 1286, 3 L.Ed.2d 1255 (1959). Lastly, an examination of the proofs in their entirety and the relation of the alleged error thereto do not convince us that even if error was committed in this respect (and we do not hold it was) it was such as is contemplated by R.R. 1:5-1(a).
The prosecutor in summation commented on the failure of defendant to take the stand to deny that he had made the telephone call to Olsen, and to explain how he had driven his inoperable vehicle to Elizabeth where he reported it had been stolen. We consider that the state of the proof was such as to justify these comments. Where there are facts in evidence concerning acts or conduct which are inculpatory or imputative in some degree of guilt, and which a defendant of his personal knowledge can deny under oath, his failure to do so is properly the subject of comment. State v. O'Leary, 25 N.J. 104, 111 (1957); State v. Costa, 11 N.J. 239, 255 (1953). While essentially the case against defendant was circumstantial, the State having offered no direct proof of a corrupt agreement among all three defendants, this, of itself, did not grant defendant immunity from comment for his failure to take the stand. Even when the ultimate conclusion of guilt is drawn from a chain of circumstances, if inculpatory facts are proved which forge the chain and the defendant is in a position to deny them, so to do. In State v. Corby, supra, 28 N.J., at pages 118-119, the court, in affirming the trial court's charge in he must deny them or risk fair comment upon his failure *536 which the judge commented on the defendant's silence, reaffirmed the rule laid down in cases such as State v. Friedman, 136 N.J.L. 527 (E. & A. 1948), and State v. Anderson, 137 N.J.L. 6 (Sup. Ct. 1948), that where the inculpatory facts are purely circumstantial, comment on an accused's silence is improper. However, the court noted parenthetically that it "is difficult to envision a case where the proof adduced by the State would be sufficiently incriminating to require the issue of guilt or innocence to be sent to the jury for determination, yet would not contain some such facts which he could deny of his personal knowledge," and that "as a practical matter, such a case is more supposititious than real, and care must be exercised so as not to deny the State the advantage of the charge where in justice it may be given." The court stated that such comment is permissible:
"* * * where there is direct evidence of facts showing defendant's participation in the crime, or where there is direct evidence of facts circumstantially implicating him." 28 N.J., at page 118. (Emphasis added)
There was in this case proof of the character underscored. Bassano did report that he had driven his car to Elizabeth at a time when it was so damaged as to be inoperable. This proof went to the heart of the charge laid against him. If there was an explanation of this report which was compatible with innocence, it was within his personal knowledge. The telephone call to Olsen was made by a person who identified himself as Bassano and as we have said, the authenticity of the identification was firmly rooted in reasoned inferences. Who better than defendant could have denied that he had made the call or had given the report attributed to him? These were facts directly proved which circumstantially implicated defendant in the conspiracy, and therefore the comment was proper.
Although in the "Statement of Questions Involved" defendant also challenged the sufficiency of the State's case, and the weight of the evidence, these points were not argued in the brief or orally and are deemed to be abandoned.