101 N.J. Super. 117 (1968)
243 A.2d 284
LARRY ROBINSON, COMPLAINANT-RESPONDENT,
v.
BRANCH BROOK MANOR APARTMENTS, GEORGE LEVIN, MARTIN LEVIN, VINCENT G. STROWAY AND CHARLES WALTON, RESPONDENTS-APPELLANTS,
v.
NEW JERSEY DIVISION ON CIVIL RIGHTS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1968.
Decided May 17, 1968.
*120 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Joseph A. Weisman argued the cause for appellants (Messrs. Hannoch, Weisman, Stern & Besser, attorneys; Mr. James J. Shrager, on the brief).
Mr. Stephen Skillman, Deputy Attorney General, argued the cause for respondent, New Jersey Division on Civil Rights (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendants appeal from the findings, determination and order of the Director, Division on Civil Rights, adjudicating their guilt of discrimination in respect of the rental of an apartment, as against the complainant, Robinson, a Negro, in violation of the Law against Discrimination, particularly N.J.S.A. 18:25-12(g) (1).
The appeal proceeds on two broad grounds: (1) the factfinding of discrimination against Robinson by defendants was unjustified; (2) the terms of the remedial administrative order were unduly broad and vulnerably vague.

I
We have carefully canvassed the entire record and find defendants' objections, legal and factual, to the determination of discrimination, to be without merit. The proofs adduced, if free from attack on admissibility grounds, reasonably sufficed to establish that the defendant landlord, acting *121 through its agent Walton, and the other individual defendants associated with the corporate defendant, hindered, discouraged and refused the rental of an apartment to Robinson while almost simultaneously indicating the availability of the same apartment to a white applicant, Barbara Spooner. Both Mrs. Spooner (pretending to be Miss Spooner) and Robinson informed Walton they were 20 years of age and earning $106 per week. They applied for the apartment the same afternoon, Robinson first. The hearing examiner and the Director could properly find from the entirety of the proofs that the landlord's purported reasons for the refusal of Robinson  his minority and low earnings  were not the real reasons and that in actuality Robinson was denied acceptance because of his race.
The crux of the fact case centered upon the alleged telephone calls from Walton to Mrs. Frank on May 1, 1967, from Mrs. Frank to Mrs. Spooner the same evening, and from Mrs. Spooner to Walton on May 2, 1967. If believed, the contents of these communications tended to establish the unqualified acceptance of Mrs. Spooner as a suitable tenant by defendants. In contrast therewith, the concomitant evasion, putting off and ultimate rejection of Robinson made out a prima facie case of illegal discrimination, which was not satisfactorily rebutted.
Defendants objected at the hearing to the evidence of the Walton-Frank telephone call on grounds of absence of authentication of Walton as the caller, as Mrs. Frank had not known Walton previously. However, in State v. Bassano, 67 N.J. Super. 526, 530-34 (App. Div. 1961), we held that although traditionally authentication of a telephone conversation required the caller's identification of himself as X and the witness's affirmation that he was able to recognize the voice as that of X, the preferred rule now is that reliable circumstantial evidence of the identity of the caller as X will suffice. See McCormick, Evidence (1954), § 193, pp. 405-406. Here Mrs. Spooner had given Walton the Frank address as her own. Although she had also given him a *122 fictitious telephone number for that address, there was extrinsic evidence justifying an inference that someone in the defendant organization had ascertained the correct number. The alleged purport of the Walton call was that Mrs. Spooner could have the apartment. There was supporting evidence that Walton had in fact made the call to the Frank home in that in his conversation with Mrs. Spooner the next day, the admissibility of which was not attacked by defendants, he confirmed the fact he had tried to reach Mrs. Spooner at the Frank apartment the previous day. Circumstances either preceding or following the disputed telephone conversation may serve to establish the identity of the party. See 29 Am. Jur.2d, Evidence, § 383, p. 435; Annotation, 105 A.L.R. 326, 335 (1936).
While defendants' brief describes the Frank testimony as hearsay, it offers no supporting argument. The testimony was not hearsay, as it was not offered to show the truth of any assertion of fact by Walton, but rather as verbal conduct constituting a part of the alleged discriminatory activity of the defendants. McCormick, op. cit., 228, pp. 463-64.
Settled principles of judicial review of quasi-judicial determinations of administrative agencies require affirmance of the fact-findings here. The conclusion of discrimination was supported by competent, substantial evidence on the whole record. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962).
We are not in agreement with the additional contention that defendants were denied a fair hearing in that the hearing examiner, whose recommended findings were adopted by the Director, "blindly and uncritically" accepted all the testimony of complainant's witnesses despite obvious defects and "inherent lack of credibility" and rejected that of defendants though "entirely supported by credible evidence." It is true that substantially all of the incriminatory evidence was accepted while that to the contrary was either disbelieved or held insufficient or immaterial to avert the conclusion of discrimination. But our study of the record indicates that the *123 foregoing is not inconsistent with the conclusion of fair and bona fide discharge of their duties by the officers in the Division. Credibility was an open question on both sides of the controversy here.

II
Aside from their attack on the Director's determination on the merits, defendants attack those provisions of the order which: (1) direct the corporate defendant to enter into a two-year lease with complainant, a minor (conditioned on cosigning by his parents); (2) direct defendants to cease and desist from discriminating in reference to rental of apartments at the premises in question with respect to processing applications, handling deposits, applying terms and conditions, negotiating and executing instruments and furnishing facilities; (3) specify the same provisions as in (2) but in respect of any apartments now or hereafter owned, controlled or managed by defendants; (4) order defendants to cease and desist from all acts or practices prohibited by N.J.S.A. 18:25-12(g), which contains three subdivisions, in view of the fact that defendants were charged with and found guilty of a violation of only one of these  (g) (1); (5) direct defendants to circulate instructions to employees to comply with the order, and (6) direct defendants to post a copy of the order at a prominent place at the premises.
The statutory provision giving jurisdiction to the Director, N.J.S.A. 18:25-17, provides, pertinently:
"If, upon all evidence at the hearing the director shall find that the respondent has engaged in any * * * unlawful discrimination as defined in this act, the director shall state his findings of fact and conclusions of law and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such * * * unlawful discrimination and to take such affirmative action, including, but not limited to, * * * extending full and equal accommodations, advantages, facilities, and privileges to all persons, as, in the judgment of the director, will effectuate the purpose of this act, and including a requirement for report of the manner of compliance." (Emphasis added)
*124 In considering whether the order departs from the statutory standards measuring the Director's remedial power it must be kept in mind that the legislation is regarded as designed to vindicate the rights of the public, as well as those of the individual complainant, against unlawful discrimination. David v. Vesta Co., 45 N.J. 301, 327 (1965). This act stands high in our public policy. Pfaus v. Palermo, 97 N.J. Super. 4, 8 (App. Div. 1967).
Item (1) specified above merely requires defendants to accord complainant the same treatment as the Director found defendants were ready to accord a white minor as tenant. If defendant is willing to rent to white minors it cannot complain of being compelled to rent to Negro minors. See N.J.S.A. 18:25-12(g) (2) (discrimination as to terms or conditions of rental or lease).
Items (2), (3) and (4) are objected to by defendants on the theory that the subject matter of the directions encompassed therein is not sufficiently related to that concerning which discrimination was here particularly adjudicated. Reliance is had on the principle that "administrative orders must be reasonably related to the findings upon which they rest and must avoid undue breadth." 1 Davis, Administrative Law (1958), § 8.19, p. 603; N.L.R.B. v. Express Publishing Co., 312 U.S. 426, 443, 61 S.Ct. 693, 85 L.Ed. 930 (1941). Analysis of the cases which have applied this principle, sometimes sustaining, on other occasions striking down, orders or portions of administrative orders, indicates that the criterion of "reasonable relationship" is frequently applied from the standpoint of the likelihood, from violation in one area, of the future incidence of violation in another more or less cognate area. The inquiry is subjective. For example, a pattern of past behavior by the respondent may indicate the permissible scope of agency control over future behavior by appropriate order. See F.T.C. v. Colgate-Palmolive Co., 380 U.S. 374, 394-395, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965).
*125 In the field of rental discrimination because of race, the Director is not without justification founded upon common knowledge and experience in believing that an apartment owner found to have discriminated because of race in one instance may well have thereby manifested a general disposition to discriminate in that respect. This would reasonably justify a correspondingly broad degree of flexibility in the terms of the cease and desist order, having in mind the statutory policy of protecting the public at large as well as the individual complainant. So viewed, we can find no basis for criticism of the items of the order under consideration.
Item (2) of the defendants' objections covers the various common types of rental discrimination recognized by specific prohibitions in N.J.S.A. 18:25-12 (g) and (h), or closely related to. We see no objection to the order prohibiting practice of any of the commonly known types or aspects of discrimination in rentals in relation to an adjudicated violator. Item (3) extends the prohibition to any property which defendants may own, control or manage now or in the future. This merely extends the prohibitions to property of defendants other than the site here involved and to later acquired property. Again, we see no objection. A potential disposition to discriminate in renting justifies both of the questioned provisions of the order in pursuit of the aim of public protection.
Item (4) of the objections is disposable on substantially the same grounds as set forth above in relation to Item (2).
Item (5) consists of a complaint of lack of understanding of how defendants are to carry out the requirements of the order for instructions to their employees to comply with the order. We think defendants know well how to comply substantially with the direction, and that is all that is required.
The objection to Item (6) is that posting the order stigmatizes defendants as law violators. However, the purpose of the order is not to stigmatize anyone but to afford prospective tenants applying at defendants' premises protective information as to their rights and to forewarn them *126 of the possibility of denial thereof at the premises. Posting is a common form of administrative sanction and clearly unexceptionable. Cf. Sellers v. Philips Barber Shop, 46 N.J. 340, 344 (1966).
Affirmed.