729 A.2d 1074 (1999)
321 N.J. Super. 619
STATE of New Jersey, Plaintiff-Respondent,
v.
Marvin MAYS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 17, 1999.
Decided June 4, 1999.
*1076 Ivelisse Torres, Public Defender, for defendant-appellant (Jacqueline E. Turner, Assistant Deputy Public Defender, of counsel and on the brief).
Peter Verniero, Attorney General, for plaintiff-respondent (Linda K. Danielson, Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, KLEINER and STEINBERG.
*1075 The opinion of the court was delivered by STEINBERG, J.A.D.
An Essex County Grand Jury returned Indictment XX-X-XXXX against defendant Marvin Mays charging him with crimes arising out of two incidents that took place on March 27, 1989, one in Irvington, and one in Belleville.
Regarding the Irvington incident defendant was charged as follows: (1) first degree kidnapping of H.K. (N.J.S.A. 2C:13-1(b)(1)) (count one); (2) first-degree robbery of H.K. (N.J.S.A. 2C:15-1) (count two); (3) first-degree aggravated sexual assault of H.K. (N.J.S.A. 2C:24-2(c)(4)) (count three); (4) second-degree attempted aggravated sexual assault of H.K.(N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2) (count four); (5) third-degree terroristic threats against H.K. (N.J.S.A. 2C:12-3) (count five); (6) first-degree aggravated sexual assault upon H.K. (N.J.S.A. 2C:14-2(a)(4)) [Recount six); (7) third-degree aggravated criminal sexual contact upon H.K. (N.J.S.A. 2C:14-3(a)) (count seven); (8) fourth-degree possession of a knife under circumstances not manifestly appropriate for such lawful uses as it may have (N.J.S.A. 2C:39-5(d)) (count eight); and (9) third-degree possession of a knife with a purpose to use it unlawfully against the person of another (N.J.S.A. 2C:39-4(d)) (count nine). The remaining counts of the indictment related to a similar incident in Belleville on the same day involving a different victim, K.P.
At trial, at the conclusion of the State's case, the judge dismissed count six due to insufficient evidence. The jury found defendant guilty of the remaining counts arising out of the Irvington incident but was unable to unanimously agree on any of the remaining counts, all of which related to the Belleville incident.
At sentencing the trial judge merged counts four and seven into count three; count eight into count nine; and count nine into count two. After granting the State's motion to sentence defendant to a discretionary extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a), the judge sentenced defendant to a term of fifty years with a period of parole ineligibility of twenty-five years on count one; to a term of forty years with a period of *1077 parole ineligibility of twenty years on count two; to a term of forty years with a period of parole ineligibility of twenty years on count three; and to a term of ten years with a period of parole ineligibility of five years on count five. The sentences were ordered to run concurrently with each other, and also to run concurrently with a Minnesota sentence defendant was then serving as well as a Passaic County sentence he was then serving. Appropriate Violent Crimes Compensation Board Penalties were also imposed. After imposition of sentence the State's motion to dismiss the remaining counts of the indictment was granted.
On appeal, defendant raises the following issues:
POINT I THE TRIAL JUDGE ERRED IN ALLOWING EVIDENCE OF AN ELECTRONIC ORGANIZER TO BE HEARD BY THE JURY AS IT CONSTITUTED INADMISSIBLE HEARSAY.
POINT II THE TRIAL JUDGE ERRED IN FAILING TO SUFFICIENTLY TAILOR THE IDENTIFICATION CHARGE TO POINT OUT THE INCONSISTENCIES IN THE ACCOUNTS OF THE VARIOUS WITNESSES. (Not Raised Below).
POINT III THE TRIAL JUDGE ERRED IN FAILING TO CURE THE PREJUDICIAL INFORMATION ADMITTED CONCERNING DEFENDANT'S PRIOR INCARCERATION. (Partially Raised Below).
POINT IV A REMAND IS NECESSARY AS DEFENDANT IS SERVING AN ILLEGAL SENTENCE COMPRISED OF FOUR EXTENDED TERM SENTENCES.
POINT V DEFENDANT'S SENTENCE IS EXCESSIVE AND NOT IN COMPLIANCE WITH THE DICTATES OF STATE V. DUNBAR. According to the State's proofs, on March 27, 1983 at approximately 5:30 p.m., defendant broke into K.P.'s home in Belleville while armed with a knife and sexually assaulted her. He also robbed her of several rings and necklaces, some of which had the letter "K" on them. During the incident K.P.'s father returned home and defendant ran out the front door.
Later that evening at approximately 10:00 p.m. defendant confronted H.K. in Irvington as she was getting out of her car near her house. H.K. yelled at defendant and told him that he had frightened her. She testified that defendant told her that he was sorry that he had frightened her and that he was trying to sell her some jewelry. He showed her a necklace and ring with the initial "K" on them. H.K. said defendant then grabbed her hair, put a knife to her side, and took her to a neighbor's backyard. Defendant told H.K. to remove all of her jewelry and repeatedly hit her. He then sexually assaulted H.K. Defendant then took H.K.'s car, jewelry and purse and fled.
The morning after the incident, H.K.'s father went to the scene of the assault and found an electronic organizer. He gave it to Sergeant Mazauskus of the Irvington Police Department who was investigating the incident. No identifiable fingerprints were found on the organizer.
At trial Belleville detective Edgar Panier testified that names and phone numbers were retrieved from the electronic organizer and they were "tracked". Mazauskus then testified that he used the organizer during his investigation. The judge expressed concern that there were "so many potential problems with hearsay in this area" that she was going to require a Rule 104(a) hearing in order to consider the hearsay ramifications. See N.J.R.E. 104(a). Outside the presence of the jury, Mazauskus testified that there were ten names and telephone numbers on the organizer. One was defendant's mother and several of the other persons were familiar with defendant. One was the mother of defendant's child. Another was a person defendant had dated. The judge expressed *1078 concern that Mazauskus would relate to the jury information he received from the people with whom he talked.
Eventually, the judge determined that the prosecutor could question Mazauskus regarding what he had said to the people whose names were listed in the organizer. The judge further noted that Mazauskus could not tell the jury what "people said to him nor what conclusions he drew from what was said to him because that's the same effect of allowing him to tell the jury what the people said. Anything he said, he may tell". Before the jury, Mazauskus testified that he called the people whose names were listed in the electronic organizer and advised them he was trying to contact defendant. On May 31, 1989, a person identifying himself as defendant contacted Mazauskus and Mazauskus asked him to come to the police station. Mazauskus further testified that on June 4, 1989, he determined that defendant was in Minneapolis, Minnesota.[1]
At the conclusion of its case the State offered into evidence the electronic organizer. The judge sustained defendant's objection in light of the State's failure to otherwise connect defendant to the organizer. She also expressed concern about her decision to permit testimony as to the identification of the caller, observing that she thought the State would present other evidence linking defendant with the electronic organizer. The judge concluded that the State was attempting to link defendant with the electronic organizer through hearsay and sustained the objection. She also noted that she "[would] consider at the appropriate time ... a cautionary instruction to the jury as to the testimony concerning the phone call".
Nevertheless, on summation the prosecutor commented that the police obtained possession of an organizer found at the scene by the victim's father and made phone calls to numbers that appeared on the organizer, "spoke to certain people, told those people ... inquired about Marvin Mays. Told those people to have Marvin Mays get in touch with him regarding a lost [organizer]. Shortly thereafter, the officer receives a call from someone who identifies himself as Marvin Mays".[2]
At the charge conference conducted pursuant to R. 1:8-7(b), the judge repeated her belief that evidence that Mazauskus received a call from defendant was hearsay if it was offered to prove that defendant was the person on the other end of the phone. She expressed her further concern that that evidence would permit the jury to speculate that defendant was the owner of the electronic organizer and was therefore present at the scene of the crime since the organizer was found there.
Accordingly, during her instructions to the jury the judge stated: Now, also, you will recall that [H.K.'s father], as well as [Mazauskus] testified about an [organizer] that was found in the vicinity of the scene of the offenses committed against [H.K.]. The [organizer] is not in evidence and will not be available to you to the jury. [Mazauskus] was permitted to testify concerning the [organizer] ... certain steps

*1079 that he took after receiving it because this information shed light on his investigation and sought to explain his decision to include the defendant's photograph in the arrays.
Under our laws of evidence, evidence may be admissible for one purpose, while not admissible for another. In this case, you were advised that there is no evidence in this case from which you may conclude that the [organizer] is, in fact, the property of [defendant]. Consequently, it's location by [H.K.'s father] nor its possession by [Mazauskus] sheds any light upon the defendant's presence at the scene. The jury may not, therefore, consider this testimony for that purpose.
We first address defendant's contention that the trial judge erred in allowing reference to the electronic organizer, and that the judge's curative charge failed to remove the prejudice. Although not considered by the parties, we consider the critical issue to be whether the telephone call alleged to have come from defendant to Mazauskus was properly authenticated. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims. See N.J.R.E. 901. The rule does not require absolute certainty or conclusive proof. The proponent of the evidence is only required to make a prima facie showing of authenticity. See McCormick on Evidence, supra, § 222; In Re Blau, 4 N.J.Super. 343, 351, 67 A.2d 316 (App.Div.1949). See also United States v. Tellier, 255 F.2d 441 (2nd Cir.1958), cert. denied, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958). Once a prima facie showing is made, the writing or statement is admissible, and the ultimate question of authenticity of the evidence is left to the jury. See McCormick on Evidence, supra, § 227; Mahoney v. Minsky, 39 N.J. 208, 219, 188 A.2d 161 (1963). Like writings, telephone conversations must be authenticated in order to be received in evidence. See State v. Bassano, 67 N.J.Super. 526, 532-34, 171 A.2d 108 (App.Div.1961); Robinson v. Branch Brook Manor Apts. et al., 101 N.J.Super. 117, 243 A.2d 284 (App.Div.), certif. denied 52 N.J. 487, 246 A.2d 448 (1968). Direct evidence of the identity of a telephone caller through recognition of the caller's voice is not the exclusive means of authenticating a telephone call. Circumstantial evidence of the identity of the caller is a satisfactory substitute for, or an equivalent of, direct evidence of identity. See State v. Bassano, supra, 67 N.J.Super. at 532, 171 A.2d 108. See also McCormick on Evidence, Fourth Edition, § 226.
A letter may be authenticated by circumstantial evidence establishing that it was sent in reply to a previous communication. See Winel v. United States, 365 F.2d 646 (8th Cir.1966). Likewise, even though the recipient of a telephone call cannot identify the voice of the caller, he may still authenticate the telephone call by establishing that it was received in response to his request. See State v. Lynes, 49 N.Y.2d 286, 425 N.Y.S.2d 295, 401 N.E.2d 405 (1980) (call received by detective from defendant shortly after he had left word for defendant to call him was properly authenticated). Here, we conclude that there were sufficient indicia of reliability to authenticate the telephone call. Mazauskus spoke to relatives and friends of defendant whose names appeared on the organizer. He asked them to have defendant telephone him. He received a call from someone who identified himself as defendant. Thus, we conclude that there were sufficient circumstantial indicia of reliability to establish a prima facie showing of authentication of defendant as the caller. Since the telephone call was properly authenticated, the content of the conversation, albeit hearsay, was admissible as a statement offered against a party, the defendant. See N.J.R.E. 803(b).
The trial judge should have given a limiting instruction telling the jury that they could only use this evidence if they found that the caller was, in fact, defendant *1080 However, as we discussed earlier, the judge ruled that the evidence was inadmissible hearsay, and therefore she forcefully instructed the jury that testimony regarding the organizer was admitted for the limited purpose of advising the jury why defendant's photograph was included in the arrays shown to the victims. The jury was clearly and forcefully told that it could not conclude that the organizer belonged to defendant and it could not consider it to establish defendant's presence at the scene. We must assume that the jury understood and followed that instruction. State v. Burris, 145 N.J. 509, 531, 679 A.2d 121 (1996); State v. Manley, 54 N.J. 259, 270, 255 A.2d 193 (1969). We conclude that this instruction cured any possible prejudice that could have resulted to defendant from the trial with reference to the organizer.
We next consider defendant's contention, raised for the first time on appeal, that the trial judge erred in failing to sufficiently tailor the identification charge to point out inconsistencies in the accounts of the various witnesses. In support of that contention defendant relies upon State v. Edmonds, 293 N.J.Super. 113, 679 A.2d 725 (App.Div.1996), certif. denied, 148 N.J. 459, 690 A.2d 606 (1997). Ordinarily, the court should tailor its instructions in a manner that explains the law to the jury in the context of the material facts of the case. See State v. Concepcion, 111 N.J. 373, 378, 545 A.2d 119 (1988). However, in Edmonds, the victim's in-court identification was inconsistent with her out-of-court identification. The victim initially told police officers that defendant was acting as a look-out while his accomplice actually stole her necklace. In court, she told a different story, identifying defendant as her assailant and the accomplice as the person standing across the street. See State v. Edmonds, supra, 293 N.J.Super. at 114-15, 679 A.2d 725. We concluded that the judge's identification charge was insufficient in light of the fact that the victim's in-court and out-of-court identifications were "glaringly inconsistent". Here, there is no such glaring inconsistency which would justify our concluding that the failure to sua sponte give a fact specific identification charge was clearly capable of producing an unjust result. See R. 2:10-2. Again, we infer from counsel's failure to object that at the moment he perceived no prejudice in the charge given. Moreover, by failing to object he did not give the judge an opportunity to consider the request. Finally, we note that there was no request pursuant to R. 1:8-7(a) for a fact-specific charge.
We next consider defendant's contention that the trial judge erred in failing to cure "prejudicial information admitted concerning defendant's prior incarceration". At trial H.K. was shown at least two photographs of defendant. On redirect examination of Mazauskus, the Assistant Prosecutor asked the officer to identify the most recent photograph of defendant that the officer had in his possession. Apparently misunderstanding the question, Mazauskus testified that "Rahway State Prison was on the back of [the photograph]". Defense counsel objected and the trial judge immediately interrupted and said to the witness "I think the question was the date". The prosecutor withdrew the question. Defendant did not ask for a curative instruction and made no other applications.
The next day, out of the presence of the jury, while the State was moving items into evidence, including the photograph in question, defendant requested that the words Rahway State Prison located on the back of the photograph be either whited out or taped over. Defendant then noted, "I'm not objecting to the fact that it may say Rahway in the front, but the back, I think, is maybe more harmful than need be". Again, no limiting instruction was requested at that point.
Immediately prior to summations, the trial judge conducted a charge conference on the record pursuant to R. 1:8-7(b). The next day, immediately prior to the jury charge, the judge conducted another charge conference. Defendant did not request *1081 a curative instruction at either charge conference.
During her final instructions to the jury, the judge stated:
Now, obviously, there are in evidence not only the photographic arrays that were identified by the victims ... but also other photographs as well. And you may notice or [it] may have occurred to you by now that some or all of these photographs appear to have been taken by law enforcement authorities. Jury is instructed that it is not to consider the fact that the agency or the law enforcement agency obtained a photograph of the defendant as prejudicing him in any way. The photographs are not evidence that the defendant has never [sic] been arrested or convicted of any crime. These types of photographs come into the hands of law enforcement from a variety of sources, including from sources totally unconnected with criminal activity. So, you may not consider that in your evaluations of the evidence.
At the conclusion of the charge, although given opportunity to do so, defendant did not object to any portion of the instructions.
We reject defendant's contention that the trial judge should have sua sponte given a limiting instruction regarding Mazauskus' mention of the words "Rahway State Prison". We recognize that evidence suggesting that defendant was previously involved in criminal activity is fraught with danger and creates an unfair risk that defendant might be convicted, not by the evidence in the case for which he is on trial, but by virtue of his prior criminal conduct. See State v. Cribb, 281 N.J.Super. 156, 656 A.2d 1279 (App.Div.1995) (cumulative effect of trial errors, including reference to photograph used to identify defendant as "mug shot" requires reversal of conviction); State v. Taplin, 230 N.J.Super. 95, 98-100, 552 A.2d 1015 (App.Div. 1988) (where defendant did not contest witnesses' identification admission into evidence of "mug shot" of defendant requires reversal of conviction); State v. Onysko, 226 N.J.Super. 599, 605, 545 A.2d 226 (App.Div.1988) (introduction into evidence of "mug shot" which on the reverse side listed the defendant's alias and his occupation as "burglar" required reversal of conviction). Compare State v. Burton, 309 N.J.Super. 280, 288-89, 706 A.2d 1181 (App.Div.), certif. denied, 156 N.J. 407, 719 A.2d 639 (1998) (error in admitting photographic array of defendant and others in orange prison attire was harmless in light of overwhelming evidence of defendant's guilt); State v. Porambo, 226 N.J.Super. 416, 425-26, 544 A.2d 870 (App.Div.1988) (reversal not required when witness testified she identified defendant's picture from a group of "mug shots" in light of curative instructions given by trial judge and the fact that the reference to "mug shots" was fleeting and not subject to prolonged examination); State v. Miller, 159 N.J.Super. 552, 561-62, 388 A.2d 993 (App.Div.1978) (mention of "mug shots" held improper but harmless in view of fleeting mention of the word and the judge's curative instruction). Here, defendant was given more than one opportunity to request a curative instruction during trial or to ask for a curative instruction during the court's charge. He failed to do so.
When no request for a limiting or curative instruction is made, defendant must show that the failure to give such an instruction sua sponte constitutes an error "clearly capable of producing an unjust result". State v. Loftin, 287 N.J.Super. 76, 97, 670 A.2d 557 (App.Div.), certif. denied, 144 N.J. 175, 675 A.2d 1123 (1996). Moreover, we infer from counsel's failure to request a curative instruction that he made a strategic decision not to draw more attention to this isolated, fleeting comment. We owe some degree of deference to counsel's strategic or tactical decisions and should carefully refrain from undermining or preempting them. See State v. Perry, 124 N.J. 128, 162, 590 A.2d 624 (1991); State v. Marshall, 123 N.J. 1, 92, 586 A.2d 85 (1991), certif. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 694 (1993). In *1082 addition, we infer from counsel's failure to request a curative instruction that at the moment he perceived no real prejudice from Mazauskus' unfortunate remark regarding Rahway State Prison, particularly in light of the fact that initially counsel indicated that he had no objection to the reference to Rahway on the front of the photograph being submitted to the jury. The remark was fleeting. The testimony relating to it, including the objection, consumes one-half page of the transcript of a five-day trial, which included four days of testimony. In that context we conclude that the judge's instruction to the jury not to consider the photographs as evidence of the fact that defendant had been previously arrested or convicted of a crime to be adequate. We must assume that the jury faithfully followed that instruction. See State v. Burris, supra, 145 N.J. at 531, 679 A.2d 121; State v. Manley, supra, 54 N.J. at 271, 255 A.2d 193. Moreover, the fact that the jury failed to convict defendant of any of the charges arising out the incident with K.P. leads to the conclusion that the failure of the trial judge to sua sponte give a curative instruction was not clearly capable of producing an unjust result.
We next consider the sentence imposed upon defendant. Prior to sentencing the State moved for a discretionary extended term under N.J.S.A. 2C:44-3(a) and a mandatory extended term pursuant to N.J.S.A. 2C:44-3(e). The latter statute makes an extended term mandatory if "[t]he defendant in committing the crime acted with a purpose to intimidate an individual ... because of ... ethnicity". At sentencing the trial judge stated that she would sentence defendant to a discretionary extended term because "it probably makes more sense to just talk about the persistent offense implication. It isn't going to change anything". The State voiced no objection. Not having filed a cross-appeal, the State asks that we remand to the trial judge for consideration of the State's motion for the imposition of an extended term pursuant to N.J.S.A. 2C:44-3(e). We conclude the trial judge's decision to impose a discretionary extended term only constituted an implicit rejection of the State's application. In the absence of an objection from the State, and in light of the State's failure to cross-appeal, we decline to remand for reconsideration of that motion.
We now consider defendant's contentions that the sentence imposed was excessive and that the judge failed to follow State v. Dunbar, 108 N.J. 80, 527 A.2d 1346 (1987), in imposing sentence. We disagree. Our role in reviewing a sentence on appeal is to determine whether (1) the correct sentencing guidelines or presumptions have been followed; (2) there is substantial evidence in the record to support the findings of fact upon which the sentencing court applied those guidelines; and (3) a sentence in accordance with the guidelines nevertheless results in a clearly unreasonable sentence that shocks the judicial conscience. See State v. Roth, 95 N.J. 334, 364-66, 471 A.2d 370 (1984). A reviewing court may not substitute its own judgment for that of the sentencing court. Id. at 365, 471 A.2d 370. Moreover, when imposing a discretionary extended term sentence a trial judge must engage in the following analysis: (1) the sentencing court must determine whether the minimum statutory predicates for subjecting the defendant to an extended term have been met; (2) the sentencing court must determine whether to impose an extended sentence; (3) it must weigh the aggravating and mitigating factors to determine the base term of the extended sentence; and, (4) it must determine whether to impose a period of parole ineligibility. State v. Dunbar, 108 N.J. 80, 89, 527 A.2d 1346 (1987). Here, the trial judge correctly determined that the minimum statutory predicates for the imposition of an extended term had been met. Defendant was sentenced for three first-degree offenses; was forty-three-years-of-age; had previously been convicted on at least two separate occasions of two crimes, committed at different times, when he was at least eighteen-years-of-age, and his last *1083 conviction was within ten years of the offense for which defendant was being sentenced. See N.J.S.A. 2C:44-3(a). Moreover, the judge correctly concluded that the protection of the public required the imposition of an extended term. See State v. Dunbar, supra, 108 N.J. at 95, 527 A.2d 1346. Defendant has a long history of violent offenses. He was first convicted in 1970 for robbery. At the time he committed that offense he was eighteen-years-of-age. In 1972 he was convicted twice for robbery.[3]
In 1978, shortly after his release from prison, defendant was again convicted of robbery. In 1978 defendant was convicted of sexual assault and robbery and received a lengthy state prison sentence. He was paroled on May 6, 1986. This offense occurred on March 27, 1989. In addition, two weeks after this offense occurred, he committed a first-degree robbery in Passaic County and was ultimately convicted and sentenced to sixteen years of incarceration with eight years of parole ineligibility. Defendant was ultimately found in Minnesota where he had been sentenced to one hundred and thirteen months of incarceration as a result of a conviction for first-degree criminal sexual contact. The trial judge properly observed that the only time society is protected from defendant is when he is incarcerated.
We have thoroughly reviewed the record, the briefs filed, and the applicable law and conclude that the sentence imposed was appropriate and does not shock our judicial conscience. The judge satisfactorily followed the dictates of State v. Dunbar, supra. There was no mistaken exercise of sentencing discretion, particularly in light of the fact that the sentences were imposed to run concurrently with the sentences imposed against defendant in Passaic County and Minnesota.
Next, the State properly concedes that the trial judge improperly sentenced defendant to four discretionary extended terms. When multiple sentences of imprisonment are imposed on a defendant, only one discretionary extended term may be imposed, even if they are to be served concurrently. See N.J.S.A. 2C:44-5(a)(2); State v. Latimore, 197 N.J.Super. 197, 223, 484 A.2d 702 (App.Div.1984), certif. denied, 101 N.J. 328, 501 A.2d 978 (1985). Accordingly, we remand to the trial judge for the preparation of an amendatory judgment of conviction imposing only one extended term sentence.
Finally, we consider defendant's contentions, raised in two separate footnotes in his appellate brief, that his trial attorney was ineffective in failing to seek a curative instruction, or mistrial, regarding the evidence of the telephone call and the statement by Mazauskus regarding Rahway State Prison. Defendant indicates he "raises this issue without prejudice to any later motion for post-conviction relief. R. 2:6-2(a)(5) requires that a party's legal argument be made under appropriate point headings. It is inappropriate to raise legal issues in footnotes and ordinarily they are not considered unless properly made under appropriate point headings. See Almog v. ITAS, 298 N.J.Super. 145, 155-56, 689 A.2d 158 (App.Div.), certif granted 151 N.J. 463, 700 A.2d 876 (1997); appeal dismissed, 152 N.J. 361, 704 A.2d 1297 (1998). Nevertheless, we have elected to consider these contentions, and after carefully considering the record, the briefs filed and the applicable law we conclude that they are clearly without merit. See R. 2:11-3(e)(2).
We remand to the trial judge for the entry of an amendatory judgment of conviction consistent with this opinion. In all other respects the judgment of conviction is affirmed.
NOTES
[1] The investigation had begun to focus on defendant prior to May 31, 1989. Based upon information received, a photographic array was prepared and shown to H.K. on April 16, 1989. She identified defendant as her assailant. Also, on June 8, 1989, a photographic array was shown to K.P. and she identified defendant as her assailant.
[2] Defendant contends that he objected to the prosecutor's comments. However, there is no objection in the transcript. In his appellate brief defendant stated that his objection "is missing from the transcript and has been ordered". The State denies an objection was made. As of the date of this opinion defendant has neither supplied a corrected transcript nor any evidence that he objected to the prosecutor's comments. However, we observe that the comments made by the prosecutor were consistent with what he represented he would say during the charge conference. Defense counsel only objected to the prosecutor indicating that the telephone call came from Minnesota, and the prosecutor refrained from making that comment before the jury.
[3] Moreover, the presentence report indicated that defendant was also convicted for another robbery and sexual assault in 1972. However, defendant denied that offense at sentence and the judge accepted his representation.