101 N.J. Super. 126 (1968)
243 A.2d 289
CHARLES P. JACKSON, COMPLAINANT-RESPONDENT,
v.
CONCORD COMPANY, A CORPORATION OF NEW JERSEY, t/a HARTFORD ARMS, JOSEPH SAMOST, "JANE" SAMOST, (FIRST NAME BEING FICTITIOUS) JANE ADAMS, EVELYN O'DONNEL, RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1968.
Decided May 20, 1968.
*128 Before Judges SULLIVAN, FOLEY and LEONARD.
Mr. Peter P. Green argued the cause for respondents-appellants (Mr. Robert T. Healy, attorney).
Mr. Stephen Skillman, Deputy Attorney General, argued the cause for the Division on Civil Rights (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by SULLIVAN, S.J.A.D.
Here involved are consolidated appeals, pursuant to R.R. 4:88-8(a), from the findings, determination, order, and supplemental order of the Director of the Division on Civil Rights, Department of Law and Public Safety.
The matter grows out of the efforts of Charles P. Jackson, complainant, to secure an apartment in a large apartment development owned by the corporate respondent. The complainant filed an application for an apartment and paid a deposit. Unable to have his application processed or acted on, complainant filed a complaint with the Division charging *129 that respondents had delayed considering his application for tenancy because he is a Negro. After a determination that probable cause existed for crediting the allegations of the complaint, and after conciliation was unsuccessful, a hearing was scheduled and testimony taken before a hearing examiner. As a result of the hearing, and acting on the recommendations of the hearing examiner, the Director issued his findings and determination that respondents were guilty of discrimination in violation of the Law Against Discrimination, N.J.S.A. 18:25-1 et seq.
The Director's Order and Supplemental Order mandated that
(1) Respondents forthwith cease and desist from discriminating against complainant and all other persons with respect to the rental or lease of apartments;
(2) Respondents, within 20 days of the Order, issue notice of the Order and written instructions for compliance therewith to all their officers, agents, and employees;
(3) Respondents cause to be posted on the premises, for a period of one year from the date of the entry of the Order, a true copy of the official housing poster of the Division on Civil Rights, a true copy of the written instructions to its officers, agents, and employees, and true copies of the Order and Supplemental Order issued by the Director;
(4) Respondents forthwith lease an apartment to complainant on specified terms;
(5) Respondents, for a period of one year following the date of the entry of the Order, make available to the Division on Civil Rights, during business hours, all records and applications concerning any and all vacancies occurring during that period for any and all apartments located in the development, the disposition of each such apartment, and copies of the rental or lease arrangement made for each vacancy;
(6) Respondents pay complainant "compensatory damages," as determined by the Director, for losses suffered as a result of the discrimination.
*130 Respondents took separate appeals from the order and supplemental order of the Director, which appeals have been consolidated. After the notices of appeal had been filed, an apartment was made available to complainant and a lease dated December 18, 1967 entered into with him on terms which differ somewhat from those specified by the Director. Pending the outcome of the appeals, this court stayed enforcement of the Director's orders, subject to the terms of the aforesaid lease.
Defendants contend that the finding of discrimination is not supported by substantial credible evidence (see Clover Hill Swimming Club v. Goldsboro, 47 N.J. 25, 36 (1966), and that in any event the proofs are insufficient to implicate the individual respondents in the alleged discrimination.
We conclude that the finding of discrimination is fully supported by the record. Complainant was subjected to all kinds of evasion and delay on his application. This treatment, together with the testimony of respondent's former rental agent as to the instructions given her, adds up to substantial credible evidence of a policy of discrimination in which complainant found himself enmeshed after he filed his application.
Operation of the development in corporate form does not shield the individuals owning and acting for the corporation from responsibility. Joseph Samost is the principal owner and president of respondent corporation, June Adams a stockholder and secretary, and Evelyn O'Donnel the present rental agent. Effective implementation of the Division's orders required that the individuals concerned be included in the findings and orders. Otherwise a new corporate shield could be formed to evade the Division's ruling. Jones v. Haridor Realty Corp., 37 N.J. 384 (1962).
Respondents also argue that the posting requirements, and the provisions for inspection of the business records, exceed the powers given the Division under this act and also constitute, as to respondents, an unreasonable, arbitrary and *131 invidious classification in violation of the State and Federal Constitutions.
This argument lacks merit. The act, in addition to authorizing a cease and desist order, empowers the Director to take such affirmative action, including but not limited to extending full and equal accommodations, as in the judgment of the Director will effecutuate the purpose of this act, including a requirement for report of the manner of compliance.
We have recently decided that requirements of posting are within the powers granted the Director. Robinson v. Branch Brook Manor Apartments, 101 N.J. Super. 117 (App. Div. 1968). Our reasoning in that case applies equally here.
The provision in the order that respondents, for a period of one year, make available for inspection by the Division its business records relating to apartment vacancies and rentals thereof, is a necessary adjunct to the power vested in the Director to order an end to the unlawful discrimination and to require a report of the manner of compliance. All the provision does is afford the Director supervision of respondents' rentals during a probationary period of one year. Such authority is clearly within the framework of the act.
Finally, we consider that part of the Director's order awarding "an appropriate amount of compensatory damages" to complainant. The order, in effect, directed respondents to reimburse complainant: (1) for excess rental the complainant was required to pay as a result of the unlawful discrimination, and (2) ten cents for every additional mile complainant drove back and forth from work as a result of being unlawfully denied the opportunity to rent an apartment in the development. The amount of damages was to be fixed by the Director by subsequent order after an apartment had been made available to complainant.
There is some support for the argument that, upon a finding of unlawful discrimination, the Director should have the right to give the complainant complete relief including *132 the award of compensatory damages. See Blumrosen, "Antidiscrimination Laws in Action in New Jersey: A Law-Sociology Study," 19 Rutgers L. Rev., 187, 242 (1965). In New York, the State Commission Against Discrimination is specifically empowered by statute to order payment of compensatory damages. Executive Law, McKinney's Consol. Laws, c. 18, § 297, subd. 2 (c). The California statute authorizes its Commission to award damages not exceeding $500, in the event that housing accommodations are not available. West's Ann. Health & Safety Code, § 35738. See generally 15 Am. Jur.2d, Civil Rights, § 63, pp. 448-450.
The New Jersey Law Against Discrimination does not contain an express provision empowering the Director to award damages. The pertinent section, N.J.S.A. 18:25-17, is as follows:
"18:25-17. Findings and conclusions of director; order
If, upon all evidence at the hearing the director shall find that the respondent has engaged in any unlawful employment practice or unlawful discrimination as defined in this act, the director shall state his findings of fact and conclusions of law and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful employment practice or unlawful discrimination and to take such affirmative action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, or restoration to membership, in any respondent labor organization, or extending full and equal accommodations, advantages, facilities, and privileges to all persons, as, in the judgment of the director, will effectuate the purpose of this act, and including a requirement for report of the manner of compliance. The director shall have the power to use reasonably certain bases, including but not limited to list, catalogue or market prices or values, or contract or advertised terms and conditions, in order to determine particulars or performance in giving appropriate remedy. If, upon all the evidence, the director shall find that the respondent has not engaged in any such unlawful employment practice or unlawful discrimination, the director shall state his findings of fact and conclusions of law and shall issue and cause to be served on the complainant an order dismissing the said complaint as to such respondent."
The Attorney General, appearing for the Division, argues that a reasonable and sensible interpretation of the act *133 in the light of its history and development, and particularly in view of the specific provision for back pay in employment cases, requires that the act be understood to empower the Director to order complete relief, including the award of money damages for losses suffered as a result of the discrimination. Actually, the issue is the narrow one of statutory construction. The inquiry is as to the legislative intent.
The award of damages to a person suffering monetary loss as the result of the unlawful action of a third party has traditionally been limited to judicial proceedings. Power to award damages will not be extended to an administrative body unless the legislative purpose to grant such power is plainly indicated.
We find nothing in the New Jersey Law Against Discrimination which clothes the Director with authority to award damages. The provision for back pay in employment cases is a precise and limited item of relief. It cannot be interpreted as a broad grant of power. The authorization to take "affirmative action" refers to putting an end to the unlawful employment practice or unlawful discrimination and securing compliance with the cease and desist order. It is not a vesting of carte blanche power in the Director.
The term "compensatory damages" is generic and encompasses all damages in satisfaction of or in recompense for the loss or injury sustained. 22 Am. Jur.2d, Damages, § 11, p. 26. In the instant case, it would include not only out-of-pocket disbursements and expenses, but also compensation for humiliation, mental suffering and time spent in vindicating the right. Even exemplary damages have a compensatory aspect to them. A broad power to assess such damages in an administrative hearing cannot be inferred as ancillary to the admitted right in the Director to order an end to the unlawful discrimination. We must deny the Division such power absent clear legislative authorization.
The provision for damages is hereby vacated and set aside. Otherwise the findings, determination, order and supplemental order of the Director are affirmed.