170 N.J. Super. 1 (1979)
405 A.2d 456
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTHONY CARMINATI, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SALVATORE "SAM" BADELAMENTI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1979.
Decided July 26, 1979.
*6 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Paul J. Giblin argued the cause for appellant Carminati.
*7 Mr. Frederick Klaessig argued the cause for appellant Badelamenti.
Mr. Blair R. Zwillman, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by MORGAN, J.A.D.
At the heart of these consolidated appeals is the propriety of a joint jury trial of a charge of conspiracy to obstruct justice (N.J.S.A. 2A:85-1 and N.J.S.A. 2A:98-1) with charges of perjury and false swearing (N.J.S.A. 2A:131-4 and N.J.S.A. 2A:131-1) arising out of testimony before the grand jury investigating the conspiracy compelled by a grant of use and fruits immunity. Also implicated herein are a multitude of issues concerning the sufficiency of the indictment, errors concerning the admissibility of evidence, an attorney's conflict of interest in representing two defendants charged with the same conspiracy, and the adequacy of the evidence to support the conviction. The jury convicted both defendants of conspiracy and of related charges of perjury and false swearing. They appeal.
The alleged conspiracy concerned an attempt to exert unlawful influence on a Superior Court judge to impose a more lenient sentence than would otherwise be warranted on two defendants scheduled to be tried before him on loan sharking charges. The alleged participants in this conspiracy were the two defendants who were to be sentenced, Frank Pintozzi and Louis Albanese, the latter being unindicted for his part in this conspiracy, and the two defendants whose appeals are here under consideration, Anthony Carminati and Salvatore Badelamenti. According to the State's theory of the conspiracy, Carminati and Badelamenti agreed that the latter would use his friendship with a Bergen County Freeholder, Gerald Calabrese, not alleged to be a conspirator, *8 to influence him to intercede with Superior Court Judge James Madden to go lightly in his sentencing of Pintozzi and Albanese. There is no question but that the indictment charged that such influence would be unlawfully exerted, that it was the corruption of the judge which was its object.
The agreement was evidenced by court-ordered electronically obtained transcriptions of intercepted phone calls and private conversations, together with testimonial evidence of physical surveillance of the alleged conspirators. For present purposes it is sufficient to note that the conversations relied upon provided an adequate basis for the jury's conclusion that Carminati and Badelamenti so agreed.
The State freely conceded that the conspiracy failed. Indeed, the grand jury which returned the indictment specifically found that to be true. Judge Madden was never reached and he sentenced Pintozzi and Albanese free of corrupting influences and without knowledge of any plan to influence him. Moreover, Calabrese, the one slated to make the corrupt overture to Judge Madden, denied, without testimonial contradiction, that Badelamenti ever asked him to approach Judge Madden. According to his testimony, he was unaware of any agreement between Carminati and Badelamenti in which he figured so prominently. Calabrese was never alleged to be part of the conspiracy.
Neither defendant testified. We derive their theories of defense from their respective summations, in turn derived by inference from the State's evidence and the testimony of Gerald Calabrese, the principal witness for the defense. Carminati's position was simply a denial that he participated in any conspiracy. Central to this defense was his denial that his was the voice on the tapes of the intercepted phone calls. Badelamenti's defense was quite different. Although in his grand jury testimony he denied that his was a voice on the taped phone calls, at trial he stipulated his part in the intercepted phone calls, contending, however, that his "agreement" with Carminati to persuade *9 Calabrese to intercede with Madden was never seriously intended. According to the argument made, he was merely "conning" Carminati to curry favor with him, never intending and never making any move to bring the "agreement" to fruition. Calabrese's denial that Badelamenti ever sought his aid in reaching Madden is referred to in support of this theory.
The foundation of the perjury and swearing charges made against defendants Carminati and Badelamenti was their sworn testimony before the grand jury investigating the possible irregularities and improprieties relevant to the disposition of the charges against Albanese and Pintozzi. Both defendants were summoned to testify at that investigation. Carminati, waiving his privilege against self-incrimination, denied participation in any attempt to influence Judge Madden, and denied under oath that his was a voice on the tapes of the intercepted phone calls, a position consistent with the one he maintained at his trial. Badelamenti, however, refused to waive his privilege and his ensuing testimony was compelled by a grant of use and fruits immunity. N.J.S.A. 2A:81-17.3. In it, he denied participation in the phone calls and denied that he discussed with Carminati the plan to influence the judge in the Pintozzi-Albanese matter, a denial that appeared to be in direct contradiction to the wiretap evidence then in the State's possession suggesting several conversations along those lines. During the testimony, a prior conviction of crime was disclosed in an attempt to persuade the grand jury that he was so upset over the prospect of the custodial sentence he was soon to commence serving that he could not have been interested in another's problems with the law. In any event, it was his testimony denying his conspiratorial discussions with Carminati which led to the perjury conviction charged in count 4 of the indictment. His denial of any attempt to persuade Calabrese to request the latter's intercession with Judge Madden ultimately led to his conviction of false swearing for that testimony.

*10 Conspiracy

Both Carminati and Badelamenti seek entry of a judgment of acquittal on the following grounds:
1. The first count of the indictment charging them with a conspiracy to obstruct justice does not charge, by its terms, that offense.
2. N.J.S.A. 2A:98-1(h) is unconstitutionally vague as applied to the facts and the conspiracy count of this indictment.
3. The conspiracy alleged in count one of the indictment is evidenced by speech alone, speech intercepted by electronic devices, and being therefore within the protection afforded speech by the First Amendment of the federal constitution, the evidence is insufficient to ground a conviction.
These three contentions clearly lack merit and we therefore reject them without extended comment. R. 2:11-3(e)(2). The gravamen of the conspiracy charge clearly was an agreement to exert an unlawful influence on a sentencing judge. The indictment so charges and the evidence adduced clearly created a jury question concerning the unlawfulness of the means agreed upon to influence Judge Madden in connection with the Pintozzi-Albanese sentences. We recognize, as defendants point out, that an agreement to inform a sentencing judge of matters relevant to a defendant being sentenced, such as his character, contrition, prior good conduct and the like, are not regarded as unlawful. Sentencing judges are free to use such information, in their discretion, to determine the appropriateness of the sentence to be imposed in a given case; those who communicate such information, even for the purpose of influencing the judge to be lenient, cannot be regarded as acting to obstruct justice, as indeed they are not.
Such, however, was not the conduct charged in the indictment and condemned by the jury in this case. The evidence, in our view, was entirely sufficient to justify the jury's conclusion that the agreement between Badelamenti and Carminati was not of a benign, but of a corrupt, nature. The jury could have *11 concluded, as apparently it did, that the purpose of the desired Calabrese intercession was not to advise Madden about some overlooked facet of the Pintozzi-Albanese matter which might persuade him to be lenient, but rather to persuade the judge on matters extraneous to the merits of the sentencing problem he would be confronting, to be more lenient with those two defendants than their cases would otherwise warrant. The jury could have found that corruption of the sentencing judge was the gist of the agreement. We have no doubt on the record of this case that a jury question concerning the corrupt nature of the agreement was created and, in the absence of the error which we have concluded tainted their conviction and requires its reversal, the jury's verdict was sufficiently supported by evidence to withstand challenge.
The error to which we refer concerns the trial judge's denial of Badelamenti's pretrial motion to sever trial of the conspiracy count from trial of the perjury and false swearing counts. At the motion, Badelamenti took the essential position that he would be prejudiced by a joint trial of the conspiracy and false testimony charges because the jury would be advised by the very presence of the perjury and false swearing charges in the conspiracy trial that the grand jury believed that defendant was lying with respect to several acts relevant to the conspiracy charge. In his view, the proposed curative jury instructions not to consider such a factor as a means of avoiding the prejudice attendant on a joint trial would be unavailing. Although the trial judge was advised that Badelamenti's immune grand jury testimony was the basis of the perjury and false swearing charges, defendant failed to urge the necessary disclosure of that immune testimony in the trial of the conspiracy charge as the reason severance was being sought. Nor did he argue that disclosure of this immune grand jury testimony would reveal defendant's prior conviction of crime without regard to defendant's election to testify in his own behalf. With respect to these latter two elements, we must determine whether *12 the denial of defendant's motion for a severance constituted plain error. R. 2:10-2.
Although joinder of the conspiracy charge with the perjury and false swearing charges in the same indictment was proper as having been based upon "2 or more acts or transactions connected together" (R. 3:7-6), we are convinced, nonetheless, that the trial court's refusal of severance was error of such magnitude as to qualify as plain error. Clearly, trial of the perjury charges necessitated disclosure of Badelamenti's immune grand jury testimony because it was portions of that testimony which were alleged to have been false. The immune testimony concerned the facts associated with the conspiracy charge and was relevant to it. By reason of the joint trial, therefore, the testimony, for which Badelamenti received immunity would be disclosed to the very jury sitting in judgment on the conspiracy charge, in clear derogation of the State's commitment that this testimony and its fruits not be used against him in connection with this charge, or indeed any other charge except that of perjury or false swearing in the giving of the immune testimony. N.J.S.A. 2A:81-17.3. This disclosure resulted in more than a merely formal violation of the immunity commitment. The immune testimony was read in its entirety to the jury considering the conspiracy charge. By this disclosure, the jury was made aware that, in direct contradiction to the position adopted at trial, Badelamenti had denied, under oath before the grand jury, any participation in the intercepted phone conversations. Such knowledge could only have prejudiced Badelamenti in his efforts to persuade the jury that his defense, "conning" Carminati, should be taken seriously.
Moreover, disclosure of Badelamenti's compelled grand jury testimony made the jury aware of his prior conviction of crime and the quantum of the custodial sentence imposed therefor in advance of Badelamenti's election whether to assume the stand in his own defense. In fact, Badelamenti elected not to testify, *13 hence rendering his prior conviction of crime inadmissible. Because he had revealed his conviction to the grand jury in aid of his defense that he had been too emotionally upset by the imminence of the custodial sentence he was soon to commence serving to conspire to aid others, the petit jury considering the conspiracy charge was advised of his criminal record. Clearly, the joint trial held in this case, necessitating the disclosure of testimony coerced under a promise of immunity, directly contrary to the commitment of immunity made, raises problems of constitutional magnitude in its undercutting of the immunity granted in exchange for the privilege against self-incrimination.
Although no New Jersey case has made extensive comment upon the propriety of a joint trial of a substantive charge with a related perjury-type charge based upon immune testimony, the recent State v. Vinegra, 73 N.J. 484, 492 (1977), viewed the necessity for separate trials as so "obvious" as to call for little additional comment. In that case, as in this one, defendant's grand jury testimony, the basis of the perjury charges, was immunized as to use and fruits, not, however, by a specific grant of immunity, but by reason of N.J.S.A. 2A:81-17.2a2 (relating to testimony given by public employees concerning their public employment). The result, however, is the same. The reason why the perjury and substantive charges cannot, in such cases, be tried together is because joint trial will require disclosure of the immune testimony to establish the testimony alleged to be false, with its clear potential for misuse by the same jury sitting on the accompanying substantive charge. Although the Vinegra comment, supra, cannot be regarded as the holding of the case, we regard it as authoritative and, moreover, we find ourselves in thorough agreement with the view it expresses.
Although joint trials of substantive offenses and related perjury charges derived from grand jury testimony have been tolerated, we have been referred to no case approving the procedure in which the joint trial would require disclosure of *14 grand jury testimony extracted under a grant of use and fruits immunity. By the very terms of the immunity granted, defendant is assured that his testimony will not be used against him in connection with the matter about which he is testifying. Such testimony can, however, be used as the basis for a charge of perjury or false swearing. To join for trial perjury charges, for which the immune testimony can be used, with another charge in which it and its fruits cannot be used, so undercuts the essential commitment of immunity as to threaten its constitutional sufficiency as a substitute for the self-incrimination privilege. See New Jersey v. Portash, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979).
Indeed, constitutional considerations aside, wherever evidence is required with respect to one offense and inadmissible and prejudicial with respect to another, except under specified conditions, those two offenses should not be tried together. For example, State v. Middleton, 143 N.J. Super. 18 (App.Div. 1976), aff'd o.b. 75 N.J. 47 (1977), held improper the joint trial of a substantive offense with the offense of possession of a weapon by a person previously convicted of crime. The latter offense required disclosure of defendant's previous conviction of crime as an essential element thereof. His prior conviction, however, would not be admissible on the other charge unless defendant elected to testify. The same is true in the present context. There is indeed, little, in principle, to distinguish the matter from Middleton, supra.
The prejudice to Badelamenti's defense of the conspiracy charge by disclosure of his immune grand jury testimony in connection with the jointly tried perjury charges is manifest. By its disclosure the jury was advised, at least, that Badelamenti testified one way before the grand jury and another way before it. It was advised that Badelamenti had been previously convicted of crime without his having testified. Furthermore, the jury in the conspiracy matter was advised, as a result of the *15 joinder, that the grand jury itself had serious questions concerning Badelamenti's credibility.
We have attempted to cast the prohibition against joint trials of substantive charges with related false swearing charges based upon immune grand jury testimony in broad terms to avoid the very expense and consumption of time which such joint trials are devised to save. We fully recognize that in any given case a joint trial, particularly where not objected to, may fortuitously avoid prejudice to a defendant's case. This would have occurred here had Badelamenti been acquitted of conspiracy. Had such been the verdict, time would have been saved. Nonetheless, the potential for prejudice inherent in such joint trials is so great and so frequently unforeseeable as to precisely how that prejudice will manifest itself, that it is best to avoid such problems by severance in all but the unusual case.
The reversal of Badelamenti's conviction for conspiracy and the remand of that charge for a new trial which we are ordering has a necessary effect on the Carminati conspiracy conviction as well. One person cannot conspire with himself. As this jury was properly instructed, a conspiracy must consist of at least two persons. State v. Furey, 128 N.J. Super. 12, 23 (App.Div. 1974). Pintozzi, the third indicted member of the alleged conspiracy, was acquitted; nothing we decide on this appeal can affect that acquittal. Because Albanese, the other alleged conspirator, was never indicted, the jury verdict was silent as to any participation on his part. We have no way of knowing whether the jury regarded him as a member thereof. By this opinion we are vacating the Badelamenti conspiracy conviction. Because one jury convicted both Badelamenti and Carminati of having conspired with each other to obstruct justice,[1] elimination of the Badelamenti conviction also requires *16 vacation of the Carminati conviction. The charge of conspiracy contained in the first count of the indictment, as to both Carminati and Badelamenti, will have to be retried.
Carminati's remaining two contentions relevant to his conspiracy conviction, that (1) material evidence was withheld from the discovery process and (2) inadmissible and prejudicial hearsay, statements of coconspirators, violated his right of confrontation and denied him due process of law, are moot because of our disposition and, in any event, are clearly without merit and are rejected without comment. R. 2:11-3(e)(2). We add only that the discovery material referred to consisted of, in the words of the trial judge who reviewed them, two paragraphs of irrelevant and potentially embarrassing material of no aid to defendant. With respect to the alleged hearsay, it is sufficient to observe that assuming arguendo its hearsay character, none of it had the capacity to influence the result. It was harmless beyond a reasonable doubt. For guidance at the new trial, we suggest that the statements of persons who conversed with those charged as conspirators are admissible without their appearance as witnesses to the extent that such statements are being offered merely to give meaning and color to the intercepted statements of the alleged conspirators and are not being offered as independent proof of the truth of what was said therein. Possible jury misuse of testimony so received should be thwarted by instructions to the jury as to its only proper purpose.
Because the conspiracy count will be retried, we need not consider Badelamenti's group of related contentions that he was deprived of the effective assistance of counsel in defense of this charge because his lawyer represented Pintozzi as well.

False Swearing and Perjury Charges
Carminati's challenge to his conviction for perjury is based primarily upon the sufficiency of the testimonial identification *17 of his voice as one of those on the tapes that evidenced the formation of the conspiracy. At all times Carminati refused to concede that the voice of the person referred to on the tapes as "Tony" was his. Accordingly, his sworn denial before the grand jury that he had made any effort to influence the sentencing in the Pintozzi-Albanese case could not, according to Carminati's theory of defense, be shown to have been false. Badelamenti, too, contends that this alleged evidential deficiency in the State's proof identifying Carminati's as the voice of the person referred to on the tapes as "Tony" taints his convictions for perjury and false swearing because his grand jury testimony at the foundation of the challenged convictions denied his conversations with Carminati evidencing the conspiratorial agreement to influence Judge Madden's sentencing through the intercession of Calabrese. If the proof failed to establish that he spoke with Carminati, the argument goes, his grand jury denial thereof cannot be shown to have been false.
Before addressing defendants' claims of error, we briefly outline the State's proofs that the voice of "Tony" was that of Carminati. Officer Grieco, the witness who listened to all the tapes and who compiled a composite tape therefrom comprising all conversations relevant to the conspiracy, testified that he was able to identify Carminati's voice and did so. The source of his knowledge was on the occasion of Carminati's arrest, at which Grieco was present, and during which he heard Carminati speak. This was the only testimony in which Grieco related the basis of his personal knowledge of the voice he was identifying. The other proffered basis for Grieco's identification was by inference drawn from the fact that the conversations were intercepted from a phone at Carminati's place of business to which he subscribed, when physical surveillance placed him at the premises, and the fact that he was referred to by those with whom he was conversing as "Tony." We have no doubt but that the evidence of Carminati's identity as the person referred to in *18 the intercepted conversations as "Tony" was more than sufficient to create a question for the jury.
With that conclusion in mind, we turn to the more technical issues regarding the evidence. First, defendants contend that the trial judge erred in failing to conduct a voir dire concerning the adequacy of Grieco's knowledge of Carminati's voice to permit the identification. In support of this contention defendants refer to State v. Johnson, 138 N.J. Super. 579, 582 (App.Div.), certif. den. 71 N.J. 340 (1976), for its holding that the constitutional safeguards established by the Supreme Court with respect to visual identification are equally applicable to identification of a voice through the auditory sense. Accordingly, defendants argue that because Grieco first identified Carminati's voice on the tapes before trial, the same type of inquiry concerning the reliability of this identification and the possibility of its being a result of undue suggestion was required.
The argument lacks merit. First, although no transcript has been provided, there is clear indication in the record that a pretrial voir dire concerning Grieco's identification of Carminati's voice on the tapes was conducted in connection with hearing the tapes themselves. The trial judge made several remarks concerning this hearing and his memory thereof, and neither counsel disagreed. Second, although we are in complete agreement with State v. Johnson, supra, we reject its application in this context. Johnson dealt with a rape victim's memory of the voice of her assailant as the only means of identifying him. In that context, the analogy to procedures used to avoid suggestion-induced visual identifications was clearly an apt one. In this matter, however, Grieco's memory of Carminati's voice was not in issue. He was privileged to make the voice identification on the basis of hearing the voice at any time, even on the day of trial. See United States v. Cox, 449 F.2d 679, 690 (10 Cir.1971), cert. den. 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972); United States v. Lo Bue, 180 F. Supp. 955, 956 (S.D.N.Y. 1960). See also, Fed.Evid.R. 901(b)(5) permitting identification of a *19 voice "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." The tapes contained the voice to be identified and were a permanent record thereof, not a fleeting impression gained by the victim of a crime. Hence, the danger of an irreparable misidentification inherent in the latter situation, the danger to be avoided by a voir dire concerning the possibility of a suggestion-induced identification, is almost entirely absent in the present one. The only condition for admitting testimony of an identification of a voice on an intercepted taped conversation is that the witness have had an opportunity to hear the voice and be able to make an identification therefrom. State v. Bassano, 67 N.J. Super. 526, 531-534 (App.Div. 1961). That was the case here. Grieco was present at the time of Carminati's arrest and heard him speak on that occasion. Although Carminati challenges the adequacy of this basis for Grieco's identification, the issue is one of evidential weight for the jury.
Carminati next contends that the State's evidence of his perjury failed to measure up to the requirements of the so-called "two witness rule." Although so denominated, the rule can be satisfied by the testimony of one witness supported by strong corroborating circumstances to establish the falsity of a defendant's sworn testimony. State v. Boratto, 154 N.J. Super. 386, 404 (App.Div. 1977), certif. granted 77 N.J. 475 (1978). We are entirely satisfied that the rule was so satisfied in this matter. Grieco's testimony identifying Carminati's voice on the taped phone calls, together with the previously described circumstances surrounding the intercepted phone calls, fully satisfies the requirements of the two-witness rule. Defendants' contention that Carminati's perjury conviction was contrary to the weight of the evidence is patently without merit.
We also reject Carminati's contention that the questions posed in the grand jury hearing were too vague and ambiguous to permit the answers thereto to found a charge of perjury. State v. Browne, 43 N.J. 321 (1964), cited in support of this contention, *20 is, in our view, distinguishable. The unambiguous questions put to Carminati clearly called for defined information and Carminati fully understood what information was being sought.
Finally, with respect to Badelamenti's perjury and false swearing convictions, his contentions that they are against the weight of the evidence and should, in any event, be reversed for his attorney's conflict of interest in representing Pintozzi as well, are both clearly without merit. R. 2:11-3(e)(2).

Disposition
The convictions of Carminati and Badelamenti for conspiracy (the first count of the indictment) are reversed and that count is remanded for a new trial thereof. The remaining convictions are affirmed.
NOTES
[1] Had a separate jury convicted Carminati, this problem would not have been encountered even if Badelamenti had been acquitted of participation in the conspiracy by a separate jury.