199 N.J. Super. 542 (1985)
489 A.2d 1256
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KENNETH McKIVER, A/K/A DAVID RAHIM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 5, 1985.
Decided March 25, 1985.
*544 Before Judges ANTELL, J.H. COLEMAN and SIMPSON.
Elizabeth Anne Cohen, attorney for appellant.
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (Mildred Vallerini Spiller, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
After a trial by jury defendant was convicted of attempted theft by extortion, N.J.S.A. 2C:20-5 and 2C:5-1. He was sentenced to a term of twelve years in New Jersey State Prison and now appeals.
On the afternoon of August 20, 1980 the driver of another vehicle signalled Edward Frielinghaus to stop his car and then approached Frielinghaus on foot. Frielinghaus rolled down his window and the stranger demanded payment of $10,000 for jewelry he said he had delivered to Frielinghaus. When Frielinghaus answered that he knew nothing of this, the man said he had a gun which he partially displayed and again warned Frielinghaus he would have to pay $10,000.
*545 Frielinghaus then drove on to his yacht club in South Kearny, arriving at about 5:00 p.m. He worked on the pump of his boat until around 11:00 p.m. when he was visited by another stranger. The intruder announced that unless the $10,000 was paid he would kill Frielinghaus, his daughter and three grandchildren. In one hand he carried a white envelope initialed "J.D.," which he referred to as a "contract"; in the other, he held a gun. Frielinghaus was told to meet his visitor the following day at Stegment Street and Ocean Avenue in Jersey City at 2:00 p.m. with the money.
Frielinghaus reported the incidents to the police. Pursuant to an arrangement, he appeared at the designated time and place while the police took up a surveillance in the immediate area. At 2:00 p.m. a third person whom Frielinghaus had not seen previously, defendant herein, arrived. He knocked on Frielinghaus' car window and entered the vehicle. Frielinghaus described the encounter as follows:
Well, he showed me this white envelope again. This fellow did. I never saw him before, but he showed me this envelope. We have the contract. Do you have the $10,000? I said to him no, I don't have no $10,000. He said well, we have to go through with the contract. He was getting out of the car and that is when the detectives grabbed him.
The white envelope bearing the initials J.D. was taken from defendant at the scene and was positively identified by Frielinghaus as the one shown to him and described as a contract at the yacht club the previous night.
We first consider defendant's contention that there was insufficient independent evidence of a conspiracy between defendant and Frielinghaus' first two visitors to authorize introduction of the latter's out-of-court declarations. Principal reliance is placed upon Evid.R. 63 which provides:
Evidence of a statement offered to prove the truth of the matter stated which is made other than by a witness while testifying at the hearing is hearsay evidence and is inadmissible except as provided in Rules 63(1) through 63(32).
The following exception appears in Evid.R. 63(9):
A statement which would be admissible if made by the declarant at the hearing is admissible against a party if ... (b) at the time the statement was made the party and the declarant were participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan.
*546 The coconspirator exception to the hearsay rule posits three conditions: (1) the statement must have been made in furtherance of the conspiracy; (2) it must have been made during the course of the conspiracy; (3) "there must be evidence, independent of the hearsay, of the existence of the conspiracy and defendant's relationship to it." State v. Phelps, 96 N.J. 500, 509-510 (1984). Defendant's challenge addresses the third of these conditions. Although the trial judge received the hearsay statements before hearing independent evidence of the conspiracy, his ruling was expressly made subject to the prosecutor's representation "that she can tie it in." Although this alteration in the order of proof lay within the judge's discretion, our concern is with the kind of evidence necessary to satisfy the rule and whether this was actually furnished.
In State v. Phelps, supra, 96 N.J. at 512 the Supreme Court observed that the trial court, in determining whether the coconspirator exception applies, is not precluded by Evid.R. 63 from considering some hearsay evidence in conjunction with independent evidence:
For example, suppose government agents who are monitoring a narcotics operation pursuant to a court order overhear a conversation in which a dealer, A, speaks to a buyer, B. A tells B that he can expect a carrier, C, to arrive at B's home in a blue 1980 Chevrolet at midnight, that C is a 35-year-old white male about six feet tall, that C will be wearing a leather jacket and black pants, and that C will use the code name "Meatball." Suppose further that B turns State's witness and testifies at C's trial that this entire description turned out to be correct. There is no compelling reason why the circumstantial indicia of reliability provided by A's hearsay statement ought not be considered in determining whether A's hearsay statement is admissible against C under the coconspirator exception. When the coconspirator's hearsay statement is used because of its inherent reliability, it ought to be considered in tandem with the independent corroborative proof.
We find independent evidence of a conspiracy in the white envelope taken from the defendant at the time of his arrest. "The least degree of concert of action suffices to render the act of one conspirator the act of all." State v. Carbone, 10 N.J. 329, 340 (1952). Frielinghaus' identification of the paper as that shown him the previous night did not depend on the out-of-court declaration.
*547 As the court stated in Phelps, supra, 96 N.J. at 511 "independent evidence may take many forms." In this case, the white envelope connected defendant to the previous visitor. Defendant displayed the envelope to Frielinghaus, described it as a "contract," and asked whether Frielinghaus had the $10,000. When Frielinghaus answered that he did not, defendant said "well, we have to go through with the contract." Disregarding for the moment the content of the out-of-court declarations, it is inferable from this much that defendant was acting at the behest of, and in concert with, at least one other person.
Because the foregoing events are not free of ambiguity, we may now look to the out-of-court declarations for clarification since they give "meaning and color" to defendant's statements and conduct just prior to his arrest. State v. Carminati, 170 N.J. Super. 1, 16 (App.Div. 1979). In our view, recourse to the out-of-court declarations is authorized by the illustrative hypothetical of Phelps, supra, 96 N.J. at 512 excerpted above. They illuminate the reasons for defendant's presence at the scene and establish his complicity in the criminal scheme, furnishing the evidence necessary to admit the supposedly hearsay incriminating declarations. Permitted from this is the inference that when defendant spoke of the $10,000 and, going ahead with the "contract" he was referring to the demands and death threats expressed by the out-of-court declarants.
A further, independent basis for admitting the out-of-court declarations is our belief that they are not hearsay because not offered "to prove the truth of the matter stated" and therefore not subject to the restrictions of Evid.R. 63. We perceive these as verbal acts intrinsic to the commission of a crime as distinguished from hearsay statements. The distinction between verbal acts and hearsay statements has been elsewhere recognized. In Robinson v. Branch Brook Manor Apts., 101 N.J. Super. 117, 122 (App.Div. 1968), certif. den. 52 N.J. 487 (1968), for example, a statement by a landlord's agent to a white applicant indicating that she would be an acceptable *548 tenant was held admissible in a civil rights hearing as "verbal conduct" evidencing a pattern of discriminatory activity. In State v. Smith, 113 N.J. Super. 120, 138-139 (App.Div. 1971), certif. den. 59 N.J. 293 (1971), a letter to defendant informing him that he was being sent a package of marijuana was deemed admissible, not for the truth of its contents, but to prove defendant's guilty knowledge in a prosecution for possession of narcotics. The court held:
When a fact relating to an out-of-court declaration is relevant to a fact in issue without regard to the truth of the fact declared, admission of the declaration does not violate the hearsay rule. [Id. at 138, citing 6 Wigmore, Evidence (3d ed. 1940) § 1788 at 234.]
And in Ringwood Assoc's, Ltd. v. Jack's of Route 23, 166 N.J. Super. 36, 42-43 (App.Div. 1979) we held in a suit for damages by a landlord against a tenant that out-of-court statements by the principal stockholder of plaintiff's predecessor in title, that he would not under any circumstances consent to a lease assignment were admissible as verbal acts to show that refusal to consent to an assignment was unreasonable.
In the instant case, any question as to the "truth of the matter stated" simply does not arise. The statements were non-accusatory in content and constituted overt acts in furtherance of a jointly undertaken criminal enterprise. They did not implicate defendant in its commission, and it was by defendant's own concerted action that he became integrated within the unfolding plot and established himself as a co-participant in the substantive offense.
Defendant also complains that the declarations were inadmissible for the further reason that he had not been indicted for a conspiracy. It is settled, however, that the acts and declarations of any coconspirator in furtherance of a common plan may be received in evidence against any other coconspirator regardless of whether the crime of conspiracy is charged. State v. Rios, 17 N.J. 572, 596 (1955); State v. Carbone, supra, 10 N.J. at 338.
Defendant's final point is that the evidence was insufficient to support the conviction, citing the fact that he was not in *549 possession of a gun or other weapon and neither assaulted nor threatened the victim. But the basis of defendant's criminal liability lies in the following language of N.J.S.A. 2C:2-6:
a. A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
b. A person is legally accountable for the conduct of another person when: * * *
(3) He is an accomplice of such other person in the commission of an offense; or
(4) He is engaged in a conspiracy with such other person.
c. A person is an accomplice of another person in the commission of an offense if:
(1) With the purpose of promoting or facilitating the commission of the offense; he * * *
(b) Aids or agrees or attempts to aid such other person in planning or committing it....
The evidence sufficiently supports the jury's finding that defendant was acting in concert with other unidentified persons for whose criminal conduct he was legally answerable. The mere fact that the others have not been prosecuted does not draw into question the propriety of defendant's conviction. N.J.S.A. 2C:2-6(f).
Affirmed.