**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1869-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FRANKIE N. GONZALES,

    Defendant-Appellant.

_____

Submitted February 27, 2019 – Decided April 4, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-10-1273.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (David M. Liston, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Frankie N. Gonzales appeals from his March 24, 2015 convictions for carjacking and related crimes. The court sentenced defendant to an aggregate twenty-five-year prison term, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He argues that evidentiary errors, prosecutorial misconduct and an excessive sentence require reversal. After reviewing the record in light of the contentions advanced on appeal, we affirm.

Defendant was convicted of fourteen crimes following a jury trial: three counts of first-degree carjacking, N.J.S.A. 2C:15-2(a)(2) to (4); second-degree kidnapping, N.J.S.A. 2C:13-1(b)(1); third-degree criminal restraint, N.J.S.A. 2C:13-2(a); two counts of first-degree robbery, N.J.S.A. 2C:15-1(a)(2) to (3); second-degree eluding, N.J.S.A. 2C:29-2(b); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); two counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(a) to (b); second-degree burglary, N.J.S.A. 2C:18-2(a)(1); third-degree theft of a motor vehicle, N.J.S.A. 2C:20-3(a); and fourth-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a).

On July 29, 2013, shortly before 10:25 a.m., the seventy-nine year old victim, who was breathing with the assistance of an oxygen tank, was driving his convertible with the top down. While stopped at a traffic light, the victim

2

heard a thump, turned, and saw a man, later identified as defendant, sitting next to him. Although "not positive about the wording," the victim testified defendant said, "I have a gun, don't make me use it or don't make me shoot." Defendant kept his hand in the pocket of his gray hooded sweatshirt. The victim felt something in his side and "didn't know if it was [defendant's] finger or a gun." Though scared and shaken up, the victim "never saw a gun" or "any type of weapon."

Defendant put the victim's oxygen tank on the floor of the car and yelled at him to keep driving. The oxygen "hose pulled [the victim] over [towards his right side] because it [was] only a four-foot hose." After driving for "[t]hree or four minutes," the victim pulled his car over and said, "I can't drive like this . . . you take my car." Defendant told the victim, "I'm not going to shoot you" and "might have said" to the victim "I just need to get to the train station." The victim noted that defendant did not harm him "in any way." The victim stated further that defendant did not ask for "a very expensive piece of jewelry" the victim was wearing, so "he really didn't abuse me in any way."

While the car was pulled over, defendant told the victim to give him his cell phone and money. The victim gave defendant his phone and "[e]ighty something dollars," took his oxygen tank, and left the car. He said he was "only

 A-1869-16T3

about [200] or 300 feet" from where defendant got into his car. Defendant said, "I'm sorry I had to do this to you" and drove away.

A sanitation worker saw the victim waving on the side of the road, stopped, and called the police. A few minutes later, Hightstown Police Officer Frank Gendron saw the victim's car. He activated his lights, got out of his car, drew his weapon, and ordered defendant, whose hands were in the air, to reach down and remove the keys from the ignition. Despite Gendron's order, defendant slumped down into the driver's seat, accelerated and drove away. Gendron alerted other police officers.

State Police Officer Harry Cannon saw defendant jumping over a guardrail near the victim's car a few minutes after he heard Gendron's call over dispatch. Cannon arrested defendant and found eighty-six dollars on him. Officers found a phone and gray hooded sweatshirt in the victim's car. They did not find a weapon on defendant or in the victim's car.

Verizon phone records showed the victim's phone made repeated outgoing calls to two phone numbers between 10:22 a.m. and 10:30 a.m. on July 29, 2013. The State presented evidence that beginning around August 2, 2013, defendant called those same two numbers from a "Middlesex County facility" on multiple

dates between August and September.  DNA samples from the hooded sweatshirt

found in the victim's car matched a sample taken from defendant.

Defendant raises the following issues on appeal:

POINT I: THE COURT ERRONEOUSLY PERMITTED THE PROSECUTOR TO INFORM THE JURY THAT, JUST HOURS BEFORE THE OFFENSE, A POLICE OFFICER FORMALLY SIGNED OFF ON GONZALES'S DEPARTURE FROM A 'MIDDLESEX COUNTY FACILITY' SITUATED AT THE PRECISE LOCATION OF THE COUNTY JAIL.  (NOT RAISED BELOW.)

A.  THE PROSECUTOR PRESENTED EVIDENCE OF GONZALES'S DEPARTURE FROM A MIDDLESEX COUNTY "FACILITY," I.E., THE MIDDLESEX COUNTY CORRECTIONAL FACILITY, THREE HOURS BEFORE THE INCIDENT.

B.  THE PROSECUTOR REMINDED THE JURY IN SUMMATION ABOUT GONZALES'S DEPARTURE FROM THE MIDDLESEX COUNTY "FACILITY," I.E., THE MIDDLESEX COUNTY CORRECTIONAL FACILITY, THREE HOURS BEFORE THE INCIDENT.

C.  THE JURY LIKELY DREW THE OBVIOUS REASONABLE INFERENCE FROM THE MANY CLUES DROPPED BY THE PROSECUTOR: THAT GONZALES HAD BEEN RELEASED FROM CUSTODY ON THE SAME MORNING HE COMMITTED NEW OFFENSES.

D.  THIS COURT SHOULD REMAND FOR A NEW TRIAL BECAUSE THE LAW DIVISION

5

FAILED TO EXCLUDE EVIDENCE THAT GONZALES HAD JUST BEEN RELEASED FROM JAIL THREE HOURS BEFORE THE OFFENSE, A FACT WHICH WAS IRREMEDIABLY PREJUDICIAL, BUT HAD NO PROBATIVE VALUE.

POINT II: IN A TRIAL WHERE THE CENTRAL FACTUAL ISSUE WAS WHAT GONZALES SAID IN ORAL UNRECORDED STATEMENTS TO THE DRIVER OF A CAR, THE COURT FAILED TO ADMINISTER THE MODEL CHARGE INSTRUCTING JURORS TO EVALUATE WITH CAUTION WHAT WAS SAID BY THE DEFENDANT. (NOT RAISED BELOW.)

POINT III: THE LOWER COURT IMPOSED A [TWENTY-FIVE]-YEAR SENTENCE, AT THE HIGH END OF THE FIRST-DEGREE CARJACKING RANGE. THIS COURT SHOULD REMAND FOR RESENTENCING BECAUSE (A) A SENTENCE AT THE HIGH END OF THE RANGE WAS INAPPROPRIATE IN A CASE WHERE NO ONE WAS HURT AND THE DEFENDANT HAD NO WEAPON, AND (B) THE LOWER COURT FAILED TO RECOGNIZE CRITICAL MITIGATING FACTORS PRESENT IN THE RECORD.

A. A [TWENTY-FIVE]-YEAR PRISON SENTENCE, AT THE HIGH END OF THE FIRST-DEGREE RANGE, WAS INCONSONANT WITH THE FACTS, BECAUSE THERE WERE NO INJURIES, DEATHS, OR WEAPONS OF ANY KIND.

B. THE LOWER COURT FAILED TO FIND OR EVEN ADDRESS CRITICAL MITIGATING FACTORS CITED BY THE DEFENSE.

6

Defendant's first two legal issues were not raised before the trial court. When a defendant raises an issue for the first time on appeal, it "denie[s] the State the opportunity to confront the claim head-on; it denie[s] the trial court the opportunity to evaluate the claim in an informed and deliberate manner; and it denie[s] any reviewing court the benefit of a robust record within which the claim could be considered." State v. Robinson, 200 N.J. 1, 21 (2009).

An appellate court may, however, review an issue not raised before the trial court under the plain error standard of review. State v. Ross, 229 N.J. 389, 407 (2017); see also R. 2:10-2. If we determine an error occurred, we consider whether the error was "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. Not any possibility of an unjust result will suffice as plain error, only one "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

## I. Facility.

The State's first witness was an officer who worked at a Middlesex County "facility." Another officer testified for the State that he was familiar with this facility. Despite being called a "facility," defendant argues that the jurors could

reasonably have concluded that hours before the offense he left the Middlesex County Jail, due to its location and the witnesses' law enforcement connections.

Defendant argues that this evidence should have been excluded under N.J.R.E. 403 because it only assisted "marginally" in proving defendant's guilt, by informing the jury that defendant was near the scene of the crime a few hours before it occurred. Defendant did not object at any time, although the testimony was not a surprise. The court instructed jurors "not to speculate at which facility the defendant was at on that day."

The rules of evidence provide: "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice . . . ." N.J.R.E. 403. Under this rule, a trial court may exclude relevant evidence if it has "a clear capacity to inflame and prejudice the jury." See State v. Rose, 112 N.J. 454, 536 (1988).

A trial court is afforded "broad discretion in determining both the relevance of the evidence to be presented and whether its probative value is substantially outweighed by its prejudicial nature." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999). A trial court's weighing of probative value against the danger of unfair prejudice under N.J.R.E. 403 "must stand unless it can be shown that the trial court palpably abused its discretion, that is, that its finding

was so wide of the mark that a manifest denial of justice resulted." State v. Cole, 229 N.J. 430, 449 (2017) (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

We do not view the admission of this evidence as clear error, if error at all. Due to the lack of objection, no record was developed as to the number of Middlesex County facilities in the area. We assume the jury followed the court's instruction not to speculate on the identity of the facility. See State v. Marshall, 173 N.J. 343, 355 (2002).

## II. Jury Charge.

Erroneous jury instructions are "poor candidates for rehabilitation under the harmless error theory." State v. Weeks, 107 N.J. 396, 410 (1987). For example, the court must always instruct the elements of the crime. State v. Vick, 117 N.J. 288, 291 (1989). However, where, as here, a defendant fails to object to the instruction, under Rule 1:7-2, a showing of plain error must be made on appeal.

"[P]lain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526,

538 (1969)). We will disregard the error and affirm the conviction "unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." State v. R.K., 220 N.J. 444, 456 (2015).

Defendant argues he was entitled to the model jury charge[1] concerning statements of the defendant pursuant to State v. Kociolek, 23 N.J. 400 (1957) and State v. Hampton, 61 N.J. 250 (1972). "If an alleged inculpatory statement was oral and there is a genuine issue regarding its precise contents, the court should caution the jury in accordance with Kociolek with respect to the risk that the hearer misunderstood or inaccurately recalled the statement." State v. Baldwin, 296 N.J. Super. 391, 401 (App. Div. 1997). The cases cited by defendant on appeal concern admissions by a defendant after the crime, or, in Baldwin, statements made by a defendant before and after the crime. Here, the victim's testimony about defendant's statements while committing the crime is not hearsay and does not require a special charge.

"As a general proposition, '[w]here statements are offered, not for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof, the statements are not

---

[1] Model Jury Charges (Criminal), "Statements of Defendant" (rev. June 14, 2010).

deemed inadmissible hearsay.'" State v. Stubblefield, 450 N.J. Super. 337, 351 (App. Div. 2017) (quoting Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 376 (2007)); N.J.R.E. 801(c). "[V]erbal acts intrinsic to the commission of a crime [are] distinguished from hearsay statements." State v. McKiver, 199 N.J. Super. 542, 544-48 (App. Div. 1985) (finding that a victim's testimony concerning threats made by alleged co-conspirators of the defendant, attempting to extort money from him, were not hearsay because they "constituted overt acts in furtherance of a jointly undertaken criminal enterprise" and were not offered for the truth of the matter asserted).

Defense counsel conducted an extensive cross-examination of the victim regarding defendant's statements, attacking the victim's ability to accurately recall what was said in the car. After closing arguments the court instructed the jury pursuant to the model jury charge on witness credibility:

> As judges of the facts, you are to determine the credibility or the believability of the witnesses. And, in determining whether a witness is to be believed, you may consider: The appearance and demeanor of the witness; the manner in which the witness testified; the witness's interest in the outcome of the trial, if any; the witness's means of obtaining their knowledge of the facts; the witness's power of discernment, meaning their judgment, understanding, ability to reason, observe, recollect, and relate; the possible bias, if any, in favor of the side for whom the witness testified; the extent to which, if at all, the witness is either

corroborated or contradicted, supported or discredited by other testimony or evidence; whether the witness testified with the intention to deceive you; the reasonableness or unreasonableness of the testimony the witness gave; whether the witness made any inconsistent or contradictory statements; and any and all other matters in the evidence which serve to support or discredit the witness's testimony.

Through this analysis, as judges of the facts, you are to weigh the testimony of each witness and then determine what weight to give it. Through that process, you may accept all of it, a portion of it, or none of it.

[See Model Jury Charges (Criminal), "Credibility of Witnesses" (rev. May 12, 2014).]

This instruction was sufficient to inform the jury to consider the witness's ability to recall facts surrounding the offense, including what defendant said.

### III. Sentence.

Defense counsel asked the court to impose a ten-year sentence subject to NERA because defendant was nineteen years old at the time of the crime, did not have prior adult convictions, did not use a weapon, and did not leave the victim in a more dangerous place than he found him. Defendant's sister informed the court that when the crime occurred, she was at a hospital in critical condition suffering from a gunshot wound. She believed defendant was trying to do "the fastest thing that he thought he could to get to [her]."

12

The court reviewed the facts surrounding the offense, emphasizing the victim's advanced age and poor health when finding aggravating factor twelve. N.J.S.A. 2C:44-1(a)(12) ("The defendant committed the offense against a person who he knew or should have known was [sixty] years of age or older, or disabled."). Emphasizing defendant's prior juvenile record, the court also found aggravating factors three and nine. N.J.S.A. 2C:44-1(a)(3) ("The risk that the defendant will commit another offense."); N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the defendant and others from violating the law."). The court did not utilize aggravating factor two, N.J.S.A. 2C:44-1(a)(2) ("[T]he defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age."), because the court believed factor two addressed the same facts as factor twelve. The court also did not find aggravating factor thirteen, N.J.S.A. 2C:44-1(a)(13) (The defendant "used or was in possession of a stolen motor vehicle."), because "that would be double counting since this is a carjacking case." The court found no mitigating factors.

The court denied the State's motion for an extended term and found that the kidnapping and robbery charges merged with the carjacking charge. The court sentenced defendant to twenty-five years in prison subject to NERA for

13                                          A-1869-16T3

carjacking, stating it was "a significant sentence, but it [was] not at the highest point of the range . . . ." The other counts either merged or resulted in concurrent custodial sentences.

An appellate court evaluates a court's sentencing determination using a deferential standard of review and must "not substitute its judgment for the judgment of the sentencing court." State v. Lawless, 214 N.J. 594, 606 (2013). If the sentencing court "properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record," then the appellate court must affirm the sentence even if it would have reached a different result. State v. Natale, 184 N.J. 458, 489 (2005) (quoting State v. O'Donnell, 117 N.J. 210, 215 (1989)).

We are, however, "expected to exercise a vigorous and close review for abuses of discretion by the [sentencing court]." Ibid.; see also State v. Miller, 449 N.J. Super. 460, 475 (App. Div. 2017). An appellate court will affirm a sentence unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case make[] the sentence clearly unreasonable so as to shock the judicial conscience."

14

[State v. Fuentes, 217 N.J. 57, 70 (2014) (first alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Defendant argues that the sentence was improper primarily because he did not have a weapon, and the court did not find the following relevant mitigating factors: defendant's youth, his sister's statement explaining the reason for the crimes, and defendant's remorse. While two sentencing factors "touch on a defendant's youthful status," N.J.S.A. 2C:44-1(b)(13) ("The conduct of a youthful defendant was substantially influenced by another person more mature than the defendant.") and N.J.S.A. 2C:44-1(b)(4) ("There were substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense."), "youth and its attendant circumstances . . . are not independently weighed as statutory mitigating factors." State v. Zuber, 227 N.J. 422, 447 n.2 (2017). Though a court has the "ability to use non-statutory mitigating factors in imposing a sentence," it is not required to consider such factors. State v. Rice, 425 N.J. Super. 375, 381 (App. Div. 2012) (emphasis added). The mitigating facts suggested by defendant do not fit neatly into the statutory mitigating factors, and the court could have imposed a much harsher sentence.

The State points to N.J.S.A. 2C:44-3(f) and N.J.S.A. 2C:43-7(a)(2), which "authorize the imposition of a prison term of between twenty years and life where, as here, the defendant has been convicted of robbery, burglary, kidnapping, or eluding 'and in the course of committing or attempting to commit the crime, including the immediate flight therefrom, the defendant used or was in possession of a stolen motor vehicle.'" The State also argues that the court could have, but did not, impose consecutive sentences because the eluding and resisting arrest "involved different victims and were committed after the crimes against [the victim] were completed."

The court thoughtfully explained its reasons for imposing sentence, articulating the facts supporting the aggravating factors and lack of mitigating factors. The sentence was supported by sufficient credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1869-16T3