807 A.2d 270 (2002)
354 N.J.Super 407
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, Plaintiff-Respondent,
v.
J.T., Defendant-Appellant,
In the Matter of J.R., a minor.
Superior Court of New Jersey, Appellate Division.
Submitted September 18, 2002.
Decided October 15, 2002.
*271 Peter A. Garcia, Acting Public Defender, for appellant (Alan I. Smith, Designated counsel, on the brief).
Peter C. Harvey, Acting Attorney General, for respondent (Patrick DeAlmeida, Deputy Attorney General, of counsel; Tara K. Catanese, Deputy Attorney General, on the brief).
Peter A. Garcia, Acting Public Defender, for J.R., a minor (Malcolm S. Goddard, Assistant Deputy Public Defender, Law Guardian, of counsel and on the brief).
Before Judges COBURN, COLLESTER and ALLEY.
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant J.T., biological father of J.R., an infant, appeals from a judgment of the Chancery Division, Family Part entered pursuant to N.J.S.A. 9:6-8.21(C)(4)(b) following a fact finding hearing in which the hearing judge determined that J.T. neglected or abused J.R. by exposing him *272 to substance abuse and domestic violence, thereby putting him at risk. We affirm.
Born May 28, 1999, J.R. is the biological son of defendant and D.R., who were not married. The New Jersey Division of Youth and Family Services (the Division) sought care and supervision of J.R. through the filing of a complaint and order to show cause on July 19, 2001. The Division permitted D.R. to live with J.R. at the residence of her sister and brother-in-law, C.M. and L.M., who were granted custody of the child. At a hearing before the Family Part judge on October 4, 2001, D.R. stipulated to facts which constituted abuse and neglect of J.R. A civil judgment was then entered against D.R. pursuant to N.J.S.A. 9:6-8.21(C)(4)(b).
On March 27, 2002, a fact finding hearing was held on the complaint against J.T. The Division called no witnesses. The hearing judge permitted introduction of a referral report from the Hawaii Department of Human Services (DHS) which reported both J.T. and D.R. were substance abusers and domestic violence had occurred between them. The report concluded J.R. would have been placed in protective custody had the family remained in Hawaii.
Other documents received from Hawaii DHS included a certified petition for custody of J.R. and a case summary prepared for the Hawaii Family Court. The petition alleged a reasonable, foreseeable and substantial risk of harm to J.R. based on incidents between J.T. and D.R. in Hawaii. It included statements by D.R. that she fled from New Jersey with J.R. to hide from J.T. by living with her sister in Hawaii. The report noted J.T. called DHS on June 7, 2001, to say D.R. had a substantial drug problem, including overdosing on heroin and cocaine, and was incapable of caring for J.R. J.T. called DHS again on June 19, 2001, this time reporting D.R. told him that she was going to kill herself and J.R. He claimed D.R. was sexually promiscuous, drug addicted and had severe psychiatric problems.
As a result of these calls, a DHS worker met with D.R. and confirmed that she had overdosed on heroin prior to living in Hawaii. D.R. blamed her heroin addiction on J.T. and said he was physically and emotionally abusive. She was deathly afraid of him because he threatened to have someone tamper with her car brakes and throw acid in her face and kill both her and her sister. D.R.'s sister, L.T., also told the DHS worker that J.T. had called them from the mainland approximately forty times a day, causing them to move and change their telephone number.
The DHS record related that D.R.'s sister, L.T., called the DHS worker on July 5, 2001, concerned because D.R. and J.R. could not be located. J.T. later called the caseworker and said he and D.R. were getting married, and D.R. then got on the phone to say she had gone back to live with defendant. The caseworker went to D.R.'s residence and found the door locked with the majority of D.R.'s belongings still in the residence. Her car was found parked at the airport.
Hawaii DHS referred the matter to the Division of New Jersey. A Division caseworker located D.R. at the home of her sister, C.M., in Marmora. She told the caseworker that J.T. convinced her to leave Hawaii and meet him in Philadelphia. They traveled to Florida where J.T. forced her to use many drugs and abused her physically and sexually. She called the police and J.T. was arrested and taken to jail. D.R. then moved to New Jersey to live with her sister and brother-in-law, C.M. and L.M. She agreed to cooperate with recommended services by the Division and give custody of J.R. to C.M. and *273 L.M. while she entered substance abuse counseling.
After introducing the documents provided by Hawaii DHS, the Division requested that the hearing judge take judicial notice of J.T.'s judgment of conviction on September 28, 2001, which related that he was sentenced following a plea of guilty to possession of a controlled dangerous substance within 1,000 feet of a school, contrary to N.J.S.A. 2C:35-7, and received a custodial term of four years with an eighteen month period of parole ineligibility. The judgment contained the following comments by the sentencing judge:
The court finds aggravating factors 3*, 6* and 9 and no mitigating factors apply to this sentence.
* Due to defendant's admitted history of cocaine and heroin addiction, alcoholism and previous "daily" use of marijuana for fifteen years; open bench warrants to New Jersey municipalities; one bench warrant from Florida; and twenty-one arrests with nineteen convictions ... Defendant is an alcoholic/addict who will remain lawless until his addiction is effectively dealt with.
The Division further requested that the hearing judge take judicial notice of a domestic violence final restraining order entered on August 15, 2001. The Title 9 hearing judge, Judge Kyran Connor, noted that he was the trial judge in the domestic violence final hearing. Defendant did not appear at the hearing for a final restraining order because he was incarcerated. Judge Connor related D.R. testified that J.T. slapped her in the head with a cell phone while they were in Florida and harassed her by calling her at her sister's home in New Jersey up to thirty times a day.
At the time of the Title 9 hearing plaintiff was still serving his sentence for violation of N.J.S.A. 2C:35-7 and awaiting extradition to the State of Florida on pending charges of kidnaping and battery relating to the incident with J.R. He testified that he became involved with D.R. in 1998, but broke off the relationship. He was unaware that he was J.R.'s father until after the results of a DNA test. He lived with D.R. in Florida and Philadelphia until D.R. left for Hawaii. He admitted calling her there on a daily basis and calling Hawaii DHS. He testified he hired a detective in Hawaii to track D.R. and knew "a lot of stuff" about her. After D.R. returned to him in Philadelphia, they went with J.R. to a Florida condominium. They lived there together only for a day because D.R. got angry when he refused to buy drugs for her and called the police, falsely accusing him of kidnaping and battery. He denied ever physically abusing D.R., but he did admit to undefined emotional abuse.
J.T. admitted to marijuana and heroin use. He testified he never used drugs when he was with his son, although he admitted sometimes coming home "a little high." He denied addiction to cocaine or alcohol, and he explained he had falsely claimed abuse of these substances before his sentence to enter a drug program and avoid jail.
Judge Connor determined that J.T. had placed J.R. in jeopardy by domestic violence against D.R. and substance abuse. A civil judgment of abuse and neglect was entered against J.T.
On appeal defendant argues the following:

POINT ITHE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING P-1 (REFERRAL RESPONSE REPORT) INTO EVIDENCE BECAUSE THE REPORT WAS NOT PROPERLY AUTHENTICATED.

*274 POINT IITHE COURT ABUSED ITS DISCRETION BY TAKING "JUDICIAL NOTICE" OF THE FACTS UNDERLYING THE PREDICATE OFFENSE FOR THE ISSUANCE OF THE FINAL RESTRAINING ORDER (P-3 IN EVIDENCE).

POINT IIITHE COURT'S FINDINGS THAT [J.R.] WAS ABUSED AND NEGLECTED WITHIN THE MEANING OF N.J.S.A. 9:6-8.21(c)(4)(b) WAS NOT SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE.
A. THE COURT FOUND THAT [J.R.] WAS ABUSED AND NEGLECTED BECAUSE OF THE DEFENDANT'S PERCEIVED MENS REA.

B. THERE WAS INSUFFICIENT CREDIBLE EVIDENCE TO FIND THAT [J.R.] WAS ABUSED AND NEGLECTED.
After careful review, we determine that the judgment of Judge Connor was based on findings of fact adequately supported by credible evidence in the record and that the appellate arguments made by defendant J.T. are without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(A) and (E). We add only the following comments.
Defendant argues that the Hawaii DHS records were insufficiently authenticated under N.J.R.E. 901 and should not have been considered. However, it is settled that circumstantial evidence is acceptable for authentication of written material. State v. Porambo, 226 N.J.Super. 416, 426-28, 544 A.2d 870 (App.Div.1988); State v. Bassano, 67 N.J.Super. 526, 532-34, 171 A.2d 108 (App.Div.1961). The documents faxed from Hawaii included a cover sheet signed by a DHS caseworker. Moreover, they were made in the ordinary course of business by a child protection agency and were admissible under N.J.R.E. 803(c)(6). They were also admissible by R. 5:12-4(d) as part of the Division reports. Furthermore, much of the material in the reports relating to the relationship of J.T. and D.R. was confirmed in the testimony of J.T. We therefore agree with Judge Connor that the reports of the Hawaii DHS could be properly considered on the issue of abuse or neglect of J.R.
We find no error in Judge Connor taking judicial notice of his findings in the earlier domestic violence hearing. In DYFS v. L.C., 346 N.J.Super. 435, 439-40, 788 A.2d 330 (App.Div.2002), we considered an objection to the same judge hearing an abuse and neglect hearing under Title 9 and a subsequent hearing to terminate parental rights under Title 30 and declared,
Judges are perfectly capable of recognizing the different issues involved, different standards of proof required and different remedies sought without "pre-judging" a defendant so to implicate due process concerns.
[Id. at 439-40, 788 A.2d 330.]
Defendant fully testified as to his version of the incidents giving rise to D.R.'s allegations of domestic violence. There was no error in Judge Connor taking judicial notice of his previous findings and concluding that defendant J.T.'s testimony was not credible.
Affirmed.